STATE *ex rel.* C. J. WHITE, Relator, *v.* CLAY COUNTY, Respondent.

1. *Mandamus — Act of November 5, 1857, bonds issued under — Warrants, county—Mandamus to enforce payment of by taxes.*—Certain warrants issued by the County Court of Clay county were in the following form:

"Treasurer of County of Clay:

"Pay to the Farmers' Bank of Missouri one hundred dollars, out of any money in the treasury appropriated for county expenses, with eight per cent. interest from 15th of April, 1861.

" Given at the court-house this 7th day of May, 1861.

"By order of the County Court.

"Test: E. D. MURRAY, Clerk.        THOMAS M. CHEVIS, President."

In *mandamus* by the holder of said warrants against Clay county, based on the act of November 5, 1857 (Adj. Sess. Acts 1857; p. 276), to compel its County Court to assess a tax for the purpose of raising money to pay them, *held,* that the warrants had none of the *indicia* of bonds authorized by the act—not being issued in the name of the county, or under the seal of the court, and not containing on their face a statement of the time, terms, and amount of the loan — and that the application for *mandamus* must fail.

2. *Mandamus does not lie to enforce collection of ordinary county indebtedness, prior to judgment obtained thereon.* — A relator is not entitled to peremptory *mandamus* to enforce the collection of an ordinary county indebtedness, prior to that indebtedness being reduced to judgment.

## Petition for mandamus.

*W. B. Napton, Jr.,* for relator.

I. It matters not, as far as the relator is concerned, whether the court borrowed money in form or not by issuing bonds therefor. Issuing warrants bearing ten per cent. interest to the contractors answered the purpose of the law, and essentially fulfilled the requirements of the act of the Legislature ; and a departure on the part of the County Court, such as is disclosed in this case, can not affect the rights of the relator or the liability of the county. (See City of Bridgeport v. Housatonic R.R. Co., 15 Conn. 475 ; Slack v. Maysville & Lexington R.R., 13 B. Monr. 9 ; Maddox v. Graham & Knox, 2 Metc., Ky., 56 ; The People v. Mead, 24 N.Y. 114 ; State *ex rel.* Moran Bros. v. Commissioners of Clinton County, 6 Ohio St. 280 ; the last case is particularly referred to. )

II. In this case no injury could possibly result to the county by the court not issuing bonds and borrowing money in that manner, but, instead, issuing non-negotiable warrants bearing a less rate of interest by two and a half per cent. than the court was authorized to pay for a loan.

III. The relator stands in the place of an innocent *bona fide* purchaser for value of these warrants, and the county is estopped from asserting that they were illegally issued. (Hann. & St. Jo. R.R. v. Marion County, 36 Mo. 234.)

*McCarty & Bining*, and *H. B. Johnson*, for respondent.

I. The relator seeks, by *mandamus*, to compel the payment of unlawful and usurious interest  This writ can not be invoked in the assertion of an inequitable claim. (State v. Treasurer of Callaway County, 43 Mo. 228.)

II. Where the amount of a claim is not fixed by law, it must be reduced to a judgment in a court in which a trial by jury can be had, before the levying a tax to pay the same will be compelled by *mandamus*. (Bennet v. Auditor Portage County, 12 Ohio, 54; Putnam County v. Allen County, 1 Ohio, 322; *ex parte* Lynch, 2 Hill, 45; Boyce v. Russell, 2 Cow. 444; People v. Brooklyn, 1 Wend. 325; *ex parte* The Firemen's Ins. Co., 6 Hill, 243; People v. Chenango County, 11 N. Y. 573; 1 Tenn. 114; Moses on Mandamus, 107.)

III. Where a debt remains in its original form as a simple contract debt, not having been reduced to a judgment, the creditor has no legal right to *mandamus* to compel a municipal corporation to levy and collect a tax for its payment. (Coy v. City Council of Lyons City, 17 Iowa, 7.)

IV. A *mandamus* to levy a tax will not be granted where there has been no unreasonable delay. A County Court can not be charged with unreasonable delay where, for the purpose of paying county expenses and indebtedness, it has every year levied a tax upon the people of the county to the full extent allowed by law; and in such case the courts, in the use of their undoubted discretion, will refuse the writ. (Tilson v. Commissioners of Putnam County, 19 Ohio, 415.)

CURRIER, Judge, delivered the opinion of the court.

This is a proceeding for a peremptory *mandamus* requiring the County Court of Clay county to assess a tax for the purpose of raising money to pay the claims set out in the petition. The petitioner states that he is the owner of one hundred and twenty-nine warrants issued by said county, for the sum of one hundred dollars each, dated May 7, 1861, and in the following form, to-wit:

"Treasurer of County of Clay:                                    [$100.]

"Pay to the Farmers' Bank of Missouri (branch at Liberty) one hundred dollars, out of any money in the treasury appropriated for county expenses, with eight per cent. interest from 15th of April, 1861.

"Given at the court-house this 7th day of May, 1861.

"By order of the County Court.

"Test: E. D. MURRAY, Clerk.              THOMAS M. CHEVIS, President."

It is alleged that these warrants were issued under the authority of the act of November 5, 1857 (Adj. Sess. Acts 1857, p. 276), and upon that ground the application for a peremptory *mandamus* is founded. The return controverts that allegation and takes issue upon it.

The case shows that the county of Clay initiated measures for the erection of a court-house some six months before the act of November, 1857, was passed, and that prior to the passage of that act the work had been contracted for, and some four thousand dollars in county warrants paid on account of it. The County Court continued to issue warrants of the same character, varying only as to interest, until the whole job was paid for and the building accounts settled.

It appears that the contractors in the meanwhile used the warrants to borrow money upon, pledging them as collateral security to the Farmers' Bank for that purpose. Subsequently the bank adjusted its loan account with the contractors, and accepted the warrants in payment and satisfaction of it. At a later date, and in May, 1861, the Clay County Court took up the warrants held by the bank, and substituted in place of them two hundred and forty-nine warrants of one hundred dollars each, the warrants described in the petition being a portion of them, the plaintiff

having acquired them by purchase and assignment. It further appeared that a portion of the warrants first issued by the County Court, on account of the building contract, bore no interest, and that they were subsequently, and after the passage of the act of November, 1857, changed by interlineation so as to carry interest at the rate of ten per cent. The foregoing are the material facts upon which the decision of the case depends.

The act of 1857 authorized the County Court of Clay county to "borrow" the amount of money therein specified, "to be appropriated in erecting a court-house in said county," and to issue the "bonds" of the county for the money so borrowed. The act also authorized the court to levy a tax to meet the bonds so issued as they might mature. The bonds contemplated by the act were, by express requirement, to be issued "in the name of the county" and "under the seal of the court," and were to contain on the face of them a statement of the "time, terms, and amount of the loan."

It is perfectly apparent that the "warrants" set out in the petition contain none of the foregoing *indicia* of the "bonds" authorized by the statute. They are not bonds in any legal sense, but were simple contract obligations.

The term "bond" imports an obligation in writing under seal, and the special act itself expressly requires that the bonds therein authorized shall be issued "under the seal of the court." They were, therefore, as a condition of their issue, first to be verified and authenticated by the seal of a court of record. But the warrants were not sealed instruments in any sense whatever.

Counsel represent the court as saying, in People v. Mead, 24 N. Y. 114, "that when commissioners are directed to issue bonds under the official seal and signatures, the law is satisfied by instruments not under seal." That is a very strange perversion of the sentiments of the court. What the court in fact said, in that case, was this: "It is objected that the instruments are unauthorized because they are not specialties, and it is argued that the word 'bond' used in the act can only be satisfied by an instrument under seal. But the towns do not have and are not

supposed to possess a common seal. There is no provision for the adoption of one, or for its custody. But if the town had a seal it would not have been proper to affix it to these obligations, for the act directs that they shall be executed in another manner, viz: under the official signatures of the supervisors and the railroad commissioners, and these instruments were authenticated in that manner. Whatever force there may be in the words 'bond or bonds,' which were used in the act, it is overcome by the explicit direction as to their execution, which has been mentioned."

The authority cited, instead of supporting the plaintiff's case, seems, on the contrary, to be quite fatal to it; for it directly recognizes, and that portion of the decision was founded upon the principle, that the requisitions of the act under which the instruments were supposed to have been issued must be complied with, although such compliance involves the disregard of the technical force and meaning of particular words.

The warrants described in the petition were not issued under the seal of the court, or indeed under any seal, and do not, therefore, meet the requirements of the act in that particular. They are mere ordinary non-negotiable county warrants, such as are contemplated by the general act in relation to county treasuries. (Gen. Stat. 1865, ch. 38, §§ 8, 9.) Their only peculiarity consists in the circumstance that they were drawn, having a specified rate of interest. Moreover, the case fails to show that the County Court ever undertook to borrow money under the special act, or indeed to borrow money at all. They did not borrow money wherewith to build the court-house, but ran the county in debt for the cost of its erection; and then, from time to time, as they were required, issued ordinary county warrants in settlement of such indebtedness, subsequently exchanging one set of county warrants for another set of the same general character. These warrants in no way purport to have been issued under the authority of the special act; nor is there a circumstance to indicate, or suggest even, that the special act was present to the thought of the court in connection with their issue, unless the insertion of a clause for interest is calculated to raise such suggestion. These warrants, therefore, not appearing to be the bonds contempla-

ted by the act aforesaid, and not appearing to have been issued under the authority or in accordance with the terms of that act, this application must fail; for it is not understood to be claimed that the relator is entitled to a peremptory *mandamus* to enforce the collection of an ordinary county indebtedness, prior to that indebtedness being reduced to judgment. (See Coy v. City of Lyons, 17 Iowa, 7.)

The peremptory writ will be denied. The other judges concur.