INTERNATIONAL BANK OF ST. LOUIS v. FRANKLIN COUNTY, APPELLANT.

1. **County warrant drawn on general fund, may be sued on when.** A county warrant payable out of any money in the treasury appropriated for county expenditures is a written acknowledgement of indebtedness by the county, and if not paid, when presented, may be sued on by the legal holder, although there is no money in the treasury to pay (*overruling Howell v. Reynolds County*, 51 Mo. 154).

2. **County warrant, assignment of.** No assignment of a county warrant will transfer the title unless made in the form prescribed by the statute (W. S. 415 sec. 34).

3. **Defective pleading not cured by verdict, when:** STATUTE OF JEOFAILS: BILL OF EXCEPTIONS. Defective averment in the petition of matter essential to be proved in order to authorize a verdict for plaintiff will not be cured by verdict, either at common law or under the statute of jeofails (Wag. Stat. 1036 §§ 19, 20), when it appears by a bill of exceptions that the evidence offered at the trial did not tend to supply the defect.

4. **Case adjudged.** Where the petition in a suit upon a county warrant stated the drawing of the warrant in favor of a person other than plaintiff, its delivery, that subsequently for a valuable consideration plaintiff became the holder and owner, and presented it to the county treasurer for payment, which was refused, but interest was paid thereon, and that the warrant was due plaintiff and unpaid, but failed to aver assignment to plaintiff in the form prescribed by statute, such assignment will not be presumed in support of a verdict and judgment for plaintiff, if the bill of exceptions shows that none such was made.

*Appeal from Franklin Circuit Court.* — HON. D. Q. GALE, Judge.

*John W. Booth* for appellant.

These special statutory instruments are in no sense direct unqualified promises to pay. That the manner in which they are to be drawn (see W. S. of 1872, p. 415 § 31), the fund out of which, and the order in which they are to be paid, are all expressly and specially regulated by statute, see W. S. 1872, page 410 § 8, page 411 §§ 9 and 10. They are payable when the ordinary revenue of the county brings into the county treasury funds sufficient, first for the payment of all like warrants first presented for payment, and then for its payment; and not before that time. Plaintiffs' statement omitting as to each cause of action to state that money appropriated for county expenditures, sufficient for the payment of the whole or of some part of any of plaintiffs' warrants, after setting apart funds sufficient for payment of all like warrants presented to the treasurer of defendant for payment prior to the presentation of respondent's warrant, failed to state facts sufficient to constitute a cause of action against appellant. *Howell v. Reynolds County*, 51 Mo. 154. The purposes for which counties are organized and to which they are confined render it an impossibility that a county should have property subject to the ordinary process of execution and sale for the satisfaction of a judgment.

And with the exception of the cases in which county courts have power to levy special taxes for the payment of certain classes of indebtedness, which power they may perhaps be compelled by mandamus to execute, persons who deal with counties so as to become general creditors must be content to take their pay from the county treasury out of the ordinary revenue of the county, in the manner and according to the order fixed by the statutes authorizing the creation and regulating the payment of county debts.

*J. C. Kiskaddon* for respondent.

1.   An action can be maintained on a county warrant. Wag. Stat. 408 § 4; *Jeffries v. Pacific*, 61 Mo. 155; *Young v. Camden Co.*, 19 Mo. 309; *State v. Clay Co.*, 46 Mo. 231; *State v. Justices Bollinger Co. Ct.*, 48 Mo. 475; *Steel v. Davis Co.*, 2 Greene (Iowa) 469; *Clark v. Polk Co.*, 19 Iowa 248; *Savage v. Crawford Co.*, 10 Wis. 49; *Markwell v. Waushara Co.*, Ib. 73.

2.   It can not be maintained that because the warrants were to be paid " out of any money in the treasury appropriated for county expenditures," therefore it is necessary to allege in the petition that there was money in the treasury appropriated to county expenditures out of which the warrant could or might be paid.   Such an appropriation does not create a fund, nor does the failure to appropriate or appropriate enough discharge the county from its indebtedness.   *Clark v. Des Moines*, 19 Iowa 199; *Kelly v. Mayor &c.*, 4 Hill 263; *Pease v. Cornish*, 19 Me. 191; *Ubsdell v. Cunningham*, 22 Mo. 124; *Terry v. Milwaukee*, 15 Wis. 490; *State v. Clay Co.*, 46 Mo. 231; *State v. Justices Bollinger Co. Ct.*, 48 Mo. 475; *Campbell v. Polk Co.*, 49 Mo. 214; *Jeffries v. Pacific*, 61 Mo. 155.

Two principles appear to be clearly established by all the cases.   These are:   1st. If the payment is to be made on account of a general municipal indebtedness, then the

direction in the warrant or order as to what it shall be paid out of, is considered merely as information conveyed to the treasurer on what account of the general fund the payment is made, and the municipality is liable to action on the warrant; and 2d. If the warrant or order shows on its face that it is issued on account of a general municipal indebtedness shared alike by the whole municipality, then the municipality is liable in an action on the warrant, although it may contain a command that it shall be paid out of some particular part of the general fund. The warrants sued on in this case are plainly within both these conclusions.

3.   Under our statute it is not necessary for us to allege in our petition that all warrants presented to the treasurer prior to the presentment of the warrant sued on had either been paid or money set apart to pay them, or that all warrants had been provided for.   If all warrants presented prior to the presentment of these warrants had been paid, and there was money in the treasury set apart, or which might be set apart, to pay them, then the only thing necessary for the holder to do would be to present them and draw his money, and an action to recover it of the county would be ridiculous.   If the treasurer refused to pay such warrants, an action would not lie against the county, but mandamus on the treasurer would be the proper remedy.   *State v. Treasurer Callaway County*, 43 Mo. 228.

Under the statute (Wag. Stat. 415 § 31) the county court cannot make an allowance and order a warrant issued until the debt is due.   Yet by the defendant's argument the creditor in attempting to collect a debt then due him is by that very attempt granting to the debtor credit for an uncertain and indefinite period, *i. e.* until all warrants presented prior to his are paid.   The length of that period depends entirely on the amount of the revenue; and that depends to a great extent on the will and caprice of county officials, who may make a levy grossly inade-

quate and continue to do so from year to year. For this the creditor has no remedy; none by mandamus, for it is a general county indebtedness, which must first be reduced to judgment; none by ordinary civil action, for he has accepted a warrant, and must wait until all warrants presented prior to his are paid. The anomaly is presented of a claim due and not due in the same breath. It is due at the moment of its allowance; three judges gravely consider it and decide that it is due, when, presto! the decision rendered, it becomes due in the dim, misty and uncertain future. This is not the law. *Savage v. Crawford Co.*, 10 Wis. 49; *Pelton v. Crawford Co.*, Ib. 69; *Markwell v. Waushara Co.*, Ib. 73; *Montague v. Harton*, 12 Wis. 599; *Terry v. Milwaukee*, 15 Wis. 490.

SHERWOOD, C. J.—Action on ten county warrants made payable "out of any money in the treasury appropriated for county expenditures." The single issue tendered by the answer was contained in the denial that the warrants "were due and payable." Judgment went for plaintiff. The motion in arrest having questioned the sufficiency of the petition necessitates an examination of its allegations; not to determine whether a demurrer would have been well taken, for we have no doubt on this score, but in order to determine whether the allegations are of such a nature as will, with the intendments which the law will supply, be sufficient after verdict. The petition in brief states the drawing of the warrants in favor of and their delivery to Bauer, that subsequently for a valuable consideration plaintiff became the holder and owner of the warrants, presented the same to the treasurer for payment, which was refused because of no money in the treasury, and that fact duly endorsed on the warrants; that the same were duly registered by the treasurer, who on the order of the county court, in the year 1871 paid plaintiff two years' interest on the warrants; that the warrants

were due plaintiff and unpaid, and therefore judgment was asked.

　The rule in these cases, at common law, is said to be this: "Where a matter is so essentially necessary to be proved that had it not been given in evidence the jury could not have given such a verdict, there the want of stating that matter in express terms in a declaration, pro-

**1. COUNTY WAR-RANTS drawn on general fund, may be sued on when.** vided it contained terms sufficiently general to comprehend it in fair and reasonable intendment, will be cured by a verdict."

*Jackson v. Pesked*, 1 Maule & Selw, 234. And doubtless the like rule should prevail even under our code practice, were an appropriate case presented for its application, but certainly not where the evidence is preserved in the bill of exceptions, and that bill shows no evidence tending to supply the defective averment. In such case there is no room for presumptions in favor of the verdict, and both the rule and the reason whereon it is founded must alike cease together. This view obtained in *Frost v. Pryor*, 7 Mo. 314, and is undoubtedly the correct one. There one of the deeds in the plaintiff's chain of title, owing to a defective acknowledgement, conveyed no title, and it was held that the record showing the contrary, no notice of the title having been perfected could be under these circumstances presumed, and that the case was unlike " those in which an appellate court is required to arrest the judgment from an examination of the declaration alone, unaccompanied by a bill of exceptions preserving the evidence."

In the case at bar the evidence is all preserved, and the only endorsements which the warrants declared on bear do not show any assignment to the plaintiff. The

**2. COUNTY WAR-RANT, assignment of.** statute ( § 34 p. 415 1 W. S.) provides: that " every assignment of any such warrants shall be in the following form :

For value received I assign the within warrant to A. B. this ―― day of ――――, 18―. Signed. C. D.

No blank indorsement shall transfer any right to a warrant, nor shall it authorize any holder to fill up the same." And the next succeeding section (35) prohibits the treasurer from paying " any warrant to any other than the person in whose favor the same is drawn, or his executor or administrator, or the person to whom the same has been assigned *in the manner above directed*," under a penalty of being deemed guilty of a misdemeanor and fined therefor from $10 to $500.

It is obvious that the plaintiff has shown no title to the warrants declared on, and under the ruling in *Frost v. Pryor, supra,* we shall not in the face of the record to the contrary, assume that to have been proven which that record conclusively shows was not done, namely, that the plaintiff had title in the warrants. Nor do we regard the statute of jeofails (§§ 19 and 20) as giving any help to the plaintiff, for we certainly should not feel at liberty to supply the defective averments in the petition, when the record itself shows that the plaintiff has acquired no title in consequence of no assignment of the warrants in conformity with the prescribed statutory method having been made. The conclusion reached on these points must accomplish a reversal of the judgment, but inasmuch as a new trial may probably occur, it is thought best to discuss other matters.

3. DEFECTIVE PLEADING NOT CURED BY VERDICT, WHEN: statute of jeofails: bill of exceptions.

It will be observed respecting warrants of the sort under consideration that the statute (1 W. S. § 32 p. 415) provides that " every such warrant shall be drawn for the whole amount ascertained to be due to the person entitled to the same." So that according to express statutory provision each warrant is an ascertainment that the sum therein mentioned is " *due* " to the person in whose favor the warrant is drawn. And it will be further observed that the preceding section (31) makes it the duty of the court, before ordering their clerk to issue a warrant, to ascertain the " sum of money to be due from the county."

In consequence of these provisions of the statute it follows that each warrant, whether drawn on a *general* or special fund, for the statute makes no distinction, is both a judicial ascertainment and a written acknowledgement of indebtedness by the county. In short, it is to all intents and purposes the *promissory note* of the county. Abundant authorities, if indeed authorities are needed where the expression of the legislative will is so plain, sustain this position. In *Perry v. City of Milwaukee* (15 Wis. 490), where the action was brought on certain orders made payable out of any money belonging to the school fund, drawn on the city treasurer by the board of school commissioners, the law authorizing such orders to be thus drawn, and payment having been by the treasurer refused, it was said :

" The holder of these orders, it is claimed, stands in precisely the same relation to the city, that a holder of a check upon a bank, drawn by a party having no funds in the bank, does in respect to the bank upon which it is drawn. It appears to us that this is an erroneous view of the subject. * * * The orders drawn by the officers of the school board are as much evidence of the indebtedness against the city as an order drawn by the mayor and clerk would be. * * * It is quite true that the law provides that the school fund shall be exclusively applied to the payment of the teachers' salaries and the other necessary expenses of the public schools; but suppose the fund is inadequate and insufficient to meet these expenses and discharge the orders of the school board, is there no remedy against the city? We have no doubt about the liability of the city on these school orders. And it is the duty of the city authorities to raise money to pay them, as much as to discharge any other just indebtedness against it. * * * If the city authorities neglect to exercise this power, or fail to levy and collect a revenue sufficient to meet its indebtedness, this is no reason why it should be relieved from all liability to those who have

just claims against it for teaching its public schools. It seems to us there·can be no doubt about the correctness of these principles of law."

In *The Board of Commissioners of Floyd Co. v. Day* (19 Ind. 450) it was held that: "The auditor of the county is authorized by law to audit claims against the county, and to draw his warrant or order upon the treasurer for their payment. Such order when drawn is in legal effect the promissory ·note of the county." In *Clark v. Des Moines* (19 Iowa 199) Judge Dillon, speaking for the court, said: "It is claimed by the city that the warrants issued for road purposes are payable out of a 'particular fund,' and that the obligation to pay depends upon the existence and the sufficiency of the special fund. * * * There is nothing in the charter which favors the notion that the liability of the city for road debts is conditioned upon the existence of road funds in the treasury. For road debts the city is absolutely and unconditionally liable as for other debts. This liability cannot be controlled or varied by the form in which warrants may be drawn or worded by the municipal officers." In *Campbell v. The County of Polk* (3 Iowa 467) suit was brought on the county warrants, drawn payable out of any money not otherwise appropriated, and it was claimed on behalf of the county that the creditor in order to recovery should allege and show that there was money in the treasury ; but the court said : "It is as clear to us as any proposition can be that he should not be held to this. He is obliged to have his claim settled by the county judge; the judge cannot pay the money, but is obliged to draw a warrant on the treasurer for it. Now, is there any reason or justice in saying that the creditor must allege and prove funds to be in the treasury, because he took a warrant, or because he took *such* an one ? Upon a refusal to pay, he might return the warrant and sue on the original consideration, and then he would be relieved from that responsibility. In the opinion of this court these warrants were payable uncondition-

ally, and if there was no money in the treasury, the county is answerable. All considerations of justice and of good law require this decision." To the same effect are *Lyell v. Supervisors, etc.*, 6 McL. 446 ; *Savage v. Supervisors, etc.*, 10 Wis. 49; *Paddock v. Symonds*, 11 Barb. 117. The soundness of the above doctrine cannot, we think, be successfully questioned. Nor can any good reason be shown why a county having, as in the present instance, given her written acknowledgements of indebtedness, should not occupy precisely the same footing as an individual would under like circumstances. If this be not so, of what avail is it to obtain a warrant at all? None whatever. In *Mansfield v. Fuller* (50 Mo. 338), where the pay claimed for certain services would come " from the general revenue of the county," it was held that *mandamus* would not lie until the claim was first reduced to judgment; and in *State ex rel. White v. Clay County* (46 Mo. 231), where the warrants were drawn payable " out of any money in the treasury appropriated for county expenses," it was held that the warrants being given for the ordinary indebtedness of the county, *mandamus* could not lie till judgment on such warrants was first obtained ; and in *Howell v. Reynolds Co.* (51 Mo. 15), where the warrants sued were of similar form to those in the case at bar, it was held in substance that the plaintiff could not recover without alleging and proving " that there were funds in the treasury out of which the warrants might have been paid, and that the treasurer refused to pay them out of such funds." So that in respect to warrants of this sort, the decidedly unique position is taken by this court, that you cannot have *mandamus* until you have *judgment*, and that you cannot have the latter, unless there are funds in the treasury. In other words, that a warrant holder has no means of compelling the payment of his warrants, except in those cases where the *treasury* is *full* and compulsory process *altogether unnecessary*. The ruling made in the last mentioned case we regard as erroneous,

and disapprove of the same, holding, as we do, that the warrants were due and payable, regardless of the fact whether there was money in the treasury for that purpose or not, and that had plaintiff in its petition, and on trial, showed title in the warrants, we should not reverse the judgment, but because this was not done the judgment is reversed and the cause remanded.   All concur.

REVERSED.