## RUMSEY v. PEOPLE'S RAILWAY COMPANY *et al.*, *Plaintiffs in Error.*

### In Banc, May 24, 1894.

1. **Practice**: PLEADINGS AND DECREE. The decree should be responsive to the pleadings.

2. ———: ———: SEVERAL AND JOINT OWNERS. Where intervenors set up the number of bonds owned by each of them, "total, 231," and the decree said "intervenors, the German-American Bank *et al.*, are owners of 231 of said mortgage bonds," thereby declaring them joint owners of the whole number, the decree is not responsive to the pleadings, and the judgment can not stand.

3. ———: UNINTELLIGIBLE DECREE. Where the decree in reciting the numbers of the bonds describes them as "571, 584, 593, inclusive," the judgment will be reversed as being unintelligible.

4. ———: PLEADINGS: EXCESSIVE JUDGMENT. A decree can not be based on a state of facts not set up in the pleadings. So that, where the petition and answer alleged that the unpaid interest on certain mortgage bonds amounted to "about $3,000," the court can not decree that it amounted to $10,990.

5. ———: ———: WAIVER: PRESUMPTION. Nor can there be any presumption that the parties waived the pleading of facts necessary to base such a finding upon, where the court did not hear evidence, but based its decree on the pleadings alone.

6. ———: ACCOUNTING. In a procedure to have a mortgage on a railroad foreclosed, and a receiver appointed to sell its property for the benefit of numerous *cestuis que trust*, where there are intervenors with separate claims, it is the duty of the court to ascertain and settle by its decree the exact amount due each, and not leave to others the duty of computing such amounts.

7. ———: MORTGAGES: NAMING TIME FOR REDEMPTION SALE. It is not reversible error in this State to order a sale under foreclosure proceedings without first fixing a day for redemption by the mortgagor. It is perhaps discretionary with a court of equity to name a day previous to which a foreclosure sale should not occur, but a failure to do so is not error.

8. ———: ———: ———: PURCHASE BY CESTUI QUE TRUST: REDEMPTION AFTER SALE. Nor is it error for the chancellor to fail to provide for a redemption after sale in the event of a purchase by the *cestuis que trust* or some of them.

*Error to St. Louis City Circuit Court.*—HON. JOHN A. TALTY, Judge.

REVERSED and REMANDED.

*R. E. Rombauer* and *C. H. Krum* for plaintiffs in error.

(1) The decree finds that "the intervenors, the German-American Bank *et al.*, are the owners of two hundred and thirty-one of said third mortgage bonds," although said ownership is not alleged in the petition, nor admitted by the answer, and the decree affirmatively shows that there was not any evidence heard in the cause. (2) The decree is wholly unintelligible in this, that while it uses the word inclusive in eight different places, it does not show whether the word so used has reference to the number of the last bond which preceded it, or whether it refers to the numbers of the two last bonds which preceded it, and other bonds whose numbers intervene between the two bonds thus numbered. Nor does the decree find whether said intervenors hold the two hundred and thirty-one bonds mentioned jointly, or if not, what their respective interests are. (3) The decree is against the admissions of the pleadings in this: It is charged in the petition and admitted by the answer that "the interest which has accrued on said first and second mortgage bonds has not been entirely paid, but that about $3,000 remains of such interest due and unpaid," but the decree finds that "all of said first mortgage bonds and second mortgage bonds remain outstanding, together with past due interest thereon,

amounting to the sum of ten thousand nine hundred and ninety dollars'' to the indebtedness so found to be due, although it affirmatively appears from the decree that there was not any evidence heard in the case. *Bank v. Franklin Co.*, 65 Mo. 110; *Frost v. Prior*, 7 Mo. 314. (4) The decree is erroneous in this, that it does not contain a finding of the exact amount due on each account at the date of the decree. *Railroad v. Fosdick*, 106 U. S. 47. (5) The decree is erroneous in this, that it does not fix a short day for redemption before sale, upon payment of the amount found to be due, with costs. In Missouri statutory foreclosure and foreclosure by bill in equity are distinct and separate remedies. *Thayer v. Burnham*, 9 Mo. 277; *Riley v. McCord*, 24 Mo. 265; *Mason v. Barnard*, 36 Mo. 384; *Fithian v. Monks*, 43 Mo. 502; *McClurg v. Phillips*, 49 Mo. 315; *Wolf v. Ward*, 104 Mo. 127. Under the equity practice what is indispensable to a decree of foreclosure is, that there should be declared the fact, nature and extent of the default which constituted the breach of the condition of the mortgage, and which justified the complainant in filing his bill to foreclose it and the amount due on account thereof, which with any further sums subsequently accruing and having become due, according to the terms of the security, the mortgagor is required to pay, within a reasonable time to be fixed by the court, and which, if not paid, a sale of the mortgaged premises is directed. *Woodward v. Fitzpatrick*, 2 B. Mon. (Ky.) 61; *Clark v. Rayburn*, 8 Wal. 323; *Harkins v. Forsythe*, 11 Leigh (Va.), 294; *Capehart v. Biggs*, 77 N. C. 261; *Durett v. Whiting*, 7 Mon. (Ky.) 261. (6) The decree is erroneous in this, that it does not provide for a redemption after sale in the event of a purchase at the sale by the *cestuis que trust* or some for them. R. S. 1889, sec. 7079.

VOL. 144 mo—12

*Noble & Shields* and *A. Arnstein* for defendant in error.

(1)   The first assignment of error, that the decree finds that the intervenors, etc., are owners of two hundred and thirty-one of said mortgage bonds, "although said ownership is not alleged in the petition nor admitted by the answer, and the decree affirmatively shows that there was not any evidence heard in the cause," is, at best, a mere irregularity.  (2) And in view of the fact that the decree provides that the holders of such bonds must deposit same with the clerk of the court, and that no payment can be made thereon until so deposited, no damage or injury could result to any one by reason of a failure of the decree to set out the specific ownership of each of the bonds.   We do not, however, concede that the use of the word inclusive" in the recital in regard to the ownership of these bonds renders the decree "wholly unintelligible," as the natural reading of the decree would be to refer the word "inclusive" to the number next to the last, and to include all the bonds between that number and the last, together with such numbers.  (3)  The third assignment of error, that the decree is against the admission of the pleadings in that the petition charges and the answer admits $3,000 of interest due, and the decree finds $10,999 due on the first and second mortgage bonds, is technically good.  (4)  The fourth assignment of error, that "the decree is erroneous in not finding the exact amount due on each account at the date of the decree," we think is well taken as the defendant is entitled to know the amount it must pay to avoid sale.   We concede on the authorities cited by plaintiff in error that the amount of debt actually due should be found in this decree, and if the court is of the opinion that the finding is not explicit enough the

case should be reversed and remanded. *Taylor v. Ins. Co.*, 1 App. D. C. 209. (5) We call attention of the court to the following authorities in which it has been held that the fixing of a short day for redemption under such a decree is discretionary with the chancellor. *Eslava v. Lepretre*, 21 Ala. 504; *Mussma v. Bartlett*, 8 Port. 277; *Perine v. Dunn*, 4 Johns. Ch. 140; *Higgins v. West*, 5 O. L. R. 554; *Taylor v. Ins. Co.*, 1 App. D. C. 209. (6) The sixth assignment of error, that "the decree is erroneous in this that it does not provide for redemption after sale in the event of a purchase at the sale by the *cestuis que trust* or some one for them (R. S. 1889, sec. 7079)," in our judgment is not well taken. *McKenzie v. Water Co.*, 71 N. W. Rep. 608; 96 Mo. 160; 97 Mo. 36; 90 Mo. 48.

GANTT, C. J.—On the sixth day of March, 1897, the plaintiff commenced a suit in the circuit court of the city of St. Louis for himself and all other holders of third mortgage bonds to foreclose what is known as the "third mortgage deed of trust," executed by the People's Railway Company to C. C. Maffitt, as trustee, to secure certain bonds of said company in said mortgage deed described. In his petition he alleged the incorporation of the People's Railway Company under the laws of this State; that C. C. Maffitt was the trustee in said "third mortgage deed of trust;" that said mortgage was recorded in book 917, page 27, and following, in the office of the recorder of deeds of the city of St. Louis; that the People's Railway Company was duly authorized to construct, maintain and operate a street railway in the city of St. Louis, and has constructed said railway, and was engaged in transporting passengers over its line commencing at the intersection of Morgan and Fourth streets, and running south on Fourth to Chouteau avenue west and southwest on

Chouteau, Carondelet, Park and Mississippi avenues to Lafayette, and thence west to Grand avenue and to Tower Grove Park; and its ownership of various tracts and lots of ground in said city, specifically describing each; and that it had a certain leasehold in block 484 in said city. Plaintiff then alleged that the bonded indebtedness and fixed obligations of the defendant, the People's Railway Company, amount to the sum of $1,000,000, evidenced as follows: *First.* By a series of one hundred and twenty-five bonds of the principal sum of $1,000 each, all of them dated May 1, 1882, payable to Julius S. Walsh or bearer (but capable of being registered), payable twenty years after said date, and bearing interest at the rate of six per cent per annum, evidenced by a series of interest coupons thereto attached, the said railway company having the right to redeem said bonds at any time after May 1, 1892; which said bonds are secured by a mortgage deed of trust upon the roadbed, rolling stock, real estate, franchises and all other properties of the defendant, the People's Railway Company, hereinafter described, executed by the defendant, the People's Railway Company, to Thomas E. Tutt and John Jackson, as trustees, which deed of trust is recorded in book 667, at page 469 and following, in the office of the Recorder of Deeds of the city of St. Louis. *Second.* By a series of seventy-five bonds for $1,000 each, all of them dated May 1, 1886, and payable at all events in sixteen years from the date thereof, and, at the option of the said defendant, the People's Railway Company, at any time after the first of May, 1896, and bearing interest at the rate of seven per cent per annum, which interest is represented by a series of semi-annual interest coupons attached thereto; which said bonds are secured by a mortgage deed of trust upon said roadbed, real estate, rolling stock, franchises

and all other properties of the defendant, the People's Railway Company, hereinafter described, executed by the defendant, the People's Railway Company, to Julius S. Walsh and John R. Lionberger, trustees, which deed of trust is recorded in book 867 at page 375 and following, in the office of the Recorder of Deeds of the city of St. Louis. *Third.* By a series of one thousand bonds for the principal sum of $1,000 each (of which series of bonds two hundred have never been issued, but remain in the treasury of said company), bearing date of the tenth of July, 1889, and payable on the first day of July, 1904, or, at the option of the defendant, the People's Railway Company, at any time after the first day of July, 1899, and bearing interest at the rate of six per cent per annum, payable on the first day of January and on the first day of July in each year, which interest is represented by a series of semi-annual coupons attached to each of said bonds; which said bonds are secured by the mortgage deed of trust already spoken of and described as the "third mortgage deed of trust." That the interest which has accrued on said first and second mortgage bonds has not been entirely paid, but that about $3,000 remain of such interest, due and unpaid. That the defendant, the People's Railway Company, has also a floating debt, incurred in the purchase of supplies, in the payment of labor, etc., payable on demand, amounting to the sum of $240,000, which floating debt is largely due, and in large sums, to citizens of other States than the State of Missouri; that the said People's Railway Company has a capital stock of $1,000,000, divided into twenty thousand shares of $50 each, which said shares are scattered among numerous holders to this plaintiff unknown; that the bonded indebtedness of said company, secured by the first, second and third mortgages aforesaid,

and amounting in the aggregate to the principal sum of $1,000,000, is held by different individuals and corporations scattered throughout the United States and Europe, and the holders of said bonds (except this plaintiff) are unknown to him, and are not discoverable by him; that there is also due to the city of St. Louis and State of Missouri a large amount for public taxes and assessments, state and municipal, lawfully assessed against the property of the defendant, the People's Railway Company, which taxes are past due and are subject to penalties because of their remaining unpaid, and which taxes are by law a first lien upon the properties of the said defendant.

Plaintiff then alleged that in pursuance of said third mortgage deed the People's Railway Company executed one thousand bonds, numbered from one to one thousand inclusive, aggregating $1,000,000, each bearing date July 10, 1889, payable fifteen years after date. Of this number eight hundred were sold and negotiated, and two hundred were never negotiated, but remain in the treasury; that of the eight hundred bonds so issued plaintiff is the lawful holder of three hundred and forty, aggregating $340,000. Plaintiff then assigns as breaches of the conditions of said mortgage, *first*, that the said railway has not paid the semi-annual interest due July 10, 1896, and January 10, 1897, and that defendant had no funds to pay the interest due July 10, 1897; *second*, that said company has not paid the public taxes lawfully assessed against the property conveyed by said mortgage deed to the amount of $30,000; *third*, that it has not performed its covenant to take up and liquidate the first and second mortgage bonds with the two hundred bonds remaining in the treasury, and the past interest on said bonds, amounting to $3,000, and that the floating debt of said company amounted to $240,000 for materials furnished,

and the company had no means of paying it.   Plaintiff charged that by the terms of the said third mortgage in case of default in the payment of either bonds or coupons for thirty days or failure or neglect to pay said taxes or assessments when due and payable, the holders of said bonds, at their option, might consider said bonds due, though not otherwise due according to their tenor, and might require the said trustee Maffitt, or his successor in said trust, to sell said property, and plaintiff averred he now elected to consider his said bonds due on account of the failure to pay said interest and taxes as aforesaid, and further averred that said trustee could only sell when required by a majority of the holders of the said third mortgage bonds and coupons; that said third mortgage bonds and coupons are widely scattered and in the hands of persons unknown; that, for this reason, a majority of the same can not be collected together for the purpose of requiring the said trustee to proceed to sell the property by advertisement and public sale, as provided in said deed of trust; and that, without the consent of a majority in value of the holders of said bonds and coupons, the said trustee declines to proceed either to advertise and sell the property and franchises conveyed by said deed of trust, or to bring suit to foreclose the said deed of trust; that by reason of the facts hereinbefore recited, and of the refusal of the defendant, C. C. Maffitt, trustee, to proceed either to advertise and sell the property and franchises conveyed by said deed of trust, or to bring an action to enforce the lien of the same, and in view of the accumulation of public taxes and penalties against said property and of the floating debts against the same, which debts may become chargeable upon the same in advance of the bonds and coupons held by the plaintiff, and in view of the accumulation of unpaid interest under the two prior mortgages upon

the same, and because the plaintiff has no adequate remedy at law, he brings this suit in equity in behalf of himself and of all other bondholders under the said third mortgage deed of trust, and prays this court: *First*, that an account may be taken and stated of the sums due to the plaintiff and to each - and every other holder of the bonds and coupons secured by the said third mortgage deed of trust, who elect to come in and prove up their claims; *second*, that this court will render its judgment or decree that, after due advertisement, the property and franchises of the defendant, the People's Railway Company, conveyed in said third mortgage deed of trust, shall be sold to enforce the lien of the said third mortgage deed of trust; *third*, that the proceeds of said sale may be distributed in the payment, *first*, of the costs and charges of this proceeding; *second*, of any public taxes, general or special, whether state or municipal, lawfully assessed against said property, together with the lawful penalties which may have accrued thereon down to the time of said degree and which may then remain unpaid; *third*, to the payment of any liens which may be established by intervening petitioners upon claims having a priority over the said third mortgage deed of trust; *fourth*, to the payment of the plaintiff and other holders of bonds and coupons issued under the said third mortgage deed of trust, according as their several claims shall be proved up and established; *fifth*, and the payment of the residue, if any, to the defendant, the People's Railway Company. The plaintiff then asked for the appointment of a receiver to take charge of the property and administer it as a trust fund under the order of the court for the benefit of the third mortgage bondholders and all other creditors having equitable or other liens thereon; that the receiver should take possession and the company be directed to turn

over its said property to him, and that the trustee be restrained from foreclosing under the power of sale.

A summons issued on the tenth day of March, 1897, and was duly served the next day on the company and the trustee Maffitt. The court appointed Charles Green receiver upon the motion of plaintiff, and he gave bond as required. On April 12, 1897, leave was given certain parties to file an intervening petition, and be made parties to the proceeding, and thereupon said parties filed the following intervening petition:

"Now come German-American Bank, a corporation, William Booth, Henry Nennecke, Fred W. Prange, trustee, James Campbell, James Campbell trustee, John W. Kaiser, Leo Levis, Wernse & Dickman, Herman A. Haeussler, and Theresa Klein, and leave of court first having been had, file this their intervening petition herein, and pray to be made parties to this proceeding. They state that they are the owners of the bonds described in plaintiff's petition as 'third mortgage bonds' of the defendant company, each of the par value of $1,000, with coupons annexed, due January 1st, 1897, and thereafter, as follows: German-American Bank, fifty bonds; William Booth, twenty-eight bonds; Henry Nennecke, eight bonds; Fred W. Prange, trustee, seventy-five bonds; James Campbell, fifteen bonds; James Campbell, trustee, thirty-seven bonds; James W. Kaiser, five; Leo Levis, three; Wernse & Dickman, three; Herman A. Haeussler, seven; Theresa Klein, five; total, two hundred and thirty-one. They admit that the defendant railway company is the owner of the property described in said petition; that it issued its first, second and third mortgage bonds as described in said petition, and that default has been made in the payment of the interest coupons attached to said third mortgage bonds, which

matured in January, 1897, but deny that default was made in the payment of the interest coupons which matured in July, 1896; deny that the said company is now indebted for a floating indebtedness in the sum of $240,000, or in any other sum, and deny that any portion of said floating indebtedness is entitled to any priority of lien over said third mortgage bonds as described in said petition; admit that there are now certain taxes and assessments due and owing by said defendant company, but deny that they amount to the sum of thirty thousand dollars."

Mr. Maffitt filed answer and stated upon information and belief the petition was true and submitted himself to the jurisdiction of the court and announced his readiness to fulfill his duties as trustee and execute the order of the court.

The company in its answer admitted all the allegations except those specifically denied. It denied that its floating debt for supplies, labor, etc., was $240,000, but alleged it was $166,100; denied that it had not paid the interest due July 10, 1896; averred that the interest in arrear for January 10, 1897, was $28,600; denied that its unpaid taxes amounted to $30,000, but stated they amounted to $25,000, and averred that it had no knowledge, or belief whether any of its floating debt would be held to constitute a lien having priority over the third mortgage deed of trust.

Thereupon at the April term, 1897, the circuit court of the city of St. Louis, upon the pleadings alone, entered a decree of foreclosure of said "third mortgage deed of trust." A writ of error was sued out of this court on the eighteenth of June, 1897, by the railway company, and upon an inspection of the record an order of *supersedeas* was granted upon the plaintiff in error giving a bond in the penal sum of

$75,000, which was duly approved and filed. Upon that record certified to this court, certain errors are assigned and will be noticed and determined in the order of their assignment.

I. The railway company asserts that manifest error appears in the decree because it finds that "intervenors, the German-American Bank *et al.*, are the owners of two hundred and thirty-one of said mortgage bonds," because the decree affirmatively shows upon its face that it was rendered entirely upon the pleadings, and the ownership of said two hundred and thirty-one bonds was not alleged in the petition nor admitted in the answer. If the plaintiff's petition and the company's answer were the only pleadings we think this should be held to be error, but when we consider that the intervenors obtained leave to file an intervening petition, and in their said petition aver their ownership of two hundred and thirty-one of the "third mortgage bonds," and that petition was filed before the company filed its answer, and in its answer it does not deny their ownership, and as the plaintiff sued not only for himself but "all other third mortgage bondholders," we do not think the court exceeded the admissions in the pleadings in finding the intervening petitioners were the owners of two hundred and thirty-one of said bonds. But there was no averment even in the intervening petition *what particular bonds* of said series were owned by the intervenors, and inasmuch as it conclusively appears no evidence was heard, there is no foundation for the finding of the court "that of the eight hundred bonds so issued, the said intervening bondholders herein, the said German-American Bank *et al.*, are the lawful holders of two hundred and thirty-one of said bonds, aggregating the principal sum of two hundred and thirty-one thousand

dollars; *"said bonds being numbered respectively as fol-
lows:* 326, 343, 401, 413 inclusive, 563, 564, 570, 571,
584, 593 inclusive, 595, 599 inclusive, 619, 634 inclus-
ive, 376, 400 inclusive, 451, 500 inclusive, 85, 308, 307,
355, 356, 444, 520, 537, 523, 789, 790, 791, 792, 795,
303, 304, 305, 434, 435, 436, 532, 535, 572, 573,
574, 564, 339, 346, 347, 348, 349, 350, 521, 522, 516,
517, 518, 528, 533, 524, 525, 526, 547, 549, 301, 306,
341, 342, 506, 575, 576, 316, 325 inclusive, 775–783
inclusive, 340, 344, 345, 440, 799, 438, 51, 52, 53, 54,
752, 786, 442, 510, 511, 512, 513, 515, 79, 80, 81, 600
to 605 inclusive, 443, 445, 501 to 505 inclusive."

It is apparent that the ownership of the bonds is a
most material fact to be determined in this foreclosure
proceeding. If allowed to stand, this finding becomes
conclusive, and can never be controverted as between
the parties, notwithstanding it may turn out hereafter
that the identical bonds described in the decree were
not the property of said intervenors, but of third par-
ties who were not parties to this suit. The decree is
not responsive to the intervening petition, in that the
said petition avers a separate ownership of the differ-
ent petitioners of certain bonds, whereas from the
decree it would seem they were all joint owners of the
whole two hundred and thirty-one. If a sale should
occur under such a loose finding as this how could the
commissioner making the sale, or the sheriff, distribute
the proceeds. We agree with the plaintiffs in error
that the finding as to the numbers of the bonds
belonging to intervenors is rendered unintelligible by
the promiscuous use of the word "inclusive," some
eight times, and it is not at all clear whether this word
has reference to the last bond which precedes it in
each case, or to the two bonds which last precede,
and all the numbers which intervene between said two
numbers. As already said in a direct proceeding like

this it must be held erroneous when so vital a matter as the ownership of the bonds for which the foreclosure is allowed, is rendered so indefinite that those whose duty it will be to distribute the fund derived from the proposed sale will be utterly unable to determine who are entitled to it.

II.   Again it is assigned as error that, whereas it is charged in the petition and admitted in the answer that "the interest which has accrued on said first and second mortgage bonds has not been entirely paid, but about $3,000 of said interest remains due and unpaid," the decree, having been rendered without the hearing of any evidence, finds that the interest in arrear on the first and second mortgage bonds amounts to $10,990. Defendants in error concede that this point is well taken under the well settled doctrine that a court can not base a decree upon a state of facts not set up in the pleadings. *Paddock v. Lance*, 94 Mo. 283; *Bank v. Franklin Co.*, 65 Mo. 110. In this case as the court was restricted to the pleadings there can be no presumption that the court heard evidence, or that the parties waived the pleading of the necessary facts, and there is no room to indulge the presumption in favor of the finding, as the reason, upon which it is usually based, falls in the light of the record to the contrary.

It is also conceded that the decree is fatally defective on appeal or writ of error because it does not find the amount due on each account so that the defendant may know just what it must pay to avoid a sale of its property. It is clearly the duty of the court to specify the amount due the plaintiff and whereas in this case there are intervening plaintiffs with separate claims, the exact amount due each should be settled by the decree and not leave it to be found or computed by others. *Railroad v. Fosdick*, 106 U. S. 47; 5

Am. and Eng. Ency. of Law, p. 376; Boone on Mort., sec. 189. We agree with counsel that in this respect the decree is clearly erroneous.

III. Perhaps the most important question raised by the assignments is this. The defendant insists the decree is erroneous because the court did not fix a short day for redemption before sale, upon the payment of the amount found to be due with costs. We think there can be little doubt that this is the practice in the Federal courts in equity. Judge MILLER in *Howell v. Railroad*, 94 U. S. 463, said: "We are of opinion, then, that there is due from the railroad company to plaintiff the amount of his over due and unpaid coupons. For this sum, whatever it may be, he has a right to decree *nisi* according to the chancery practice—a decree which will ascertain the sum so due, and give the company a reasonable time to pay it, say ninety days or six months or until the next term of the court, in the discretion of that court. If this sum is not paid, the court must then order a sale of the mortgaged property, with a foreclosure of all rights subordinate to the mortgage with directions to bring the purchase money into court." Obviously it is the above rule which defendant now invokes. Does such a practice now obtain in Missouri? Is it reversible error to order a sale under foreclosure proceedings without first fixing a day for redemption by the mortgagor? We answer that a court of equity has a broad latitude in framing its decrees so as to do justice. It is perhaps discretionary with a court of chancery to name a day previous to which a foreclosure *sale* should not occur, but we unhesitatingly say that it is not only *not erroneous* under the established practice in this State, to fail to fix a short day for redemption in foreclosures by bills in equity before *ordering* a sale, but it would be a most unusual proceeding. The practice of thus fixing a day

has become obsolete in this State. No sound reason can be given why a plaintiff, to whom moneys are secured by a mortgage, should be delayed in obtaining his decree of sale beyond the day of final hearing of the cause. Chancellor Kent in *Perine v. Dunn*, 4 Johns. Ch. 143, says: "The rule and the practice apply only to cases of strict foreclosure where by the decree, the equity of redemption, is barred, and the complete title is vested in the mortgagee. The rule does not apply to cases of decrees for the sale of the mortgaged premises according to our usual practice. The mortgagor in such cases is not subjected to a severe and absolute forfeiture of all his right, but he has the chance of the surplus moneys arising from the sale, and is placed upon the same footing of equality with debtors against whom judgments are rendered and execution awarded at law." Without doubt the general practice in Missouri conforms to the Chancellor's statement of the rule in New York. Moreover under our statute an execution may issue at once upon any judgment or decree. R. S. 1889, sec. 4895. If, as contended by defendant, the circuit court is bound to set a day certain three months or six months ahead according to the old English practice before entering its final decree of foreclosure and sale, then it is obvious that a mortgagee would be placed in a worse condition than any other creditor. No such distinction can be maintained upon principle and none such was in our opinion intended by the legislature. In the language of the Supreme Court of Alabama, "It would be incompatible with justice and calculated to disturb the harmony of the law, and as the reason of it has ceased, we can not give it our sanction." *Mussina v. Bartlett*, 8 Porter (Ala.), 277; *Higgins v. West*, 5 Ohio, 554. This objection must be and is ruled against the defendant.

Equally unsubstantial is the point that the circuit

court erred in not providing for a redemption after sale in the event of a purchase by the *cestuis que trust* or some one of them. Section 7079, Revised Statutes 1889, by its terms has no application whatever to a sale under a final decree of foreclosure and the language of that section will not be extended by judicial construction. For the errors noted the decree is reversed and the cause remanded for a new trial.

SHERWOOD, BURGESS, ROBINSON, BRACE, WILLIAMS and MARSHALL, JJ., concur.