154  215
s91a  204

# RUMSEY v. PEOPLES RAILWAY COMPANY, Appellant, and MAFFITT, Trustee.*

## In Banc, February 20, 1900.

1. **Deed of Trust: FORECLOSURE: NECESSARY PARTIES: BONDHOLDERS; TRUSTEE.** A deed of trust given by a railway company to secure the payment of bonds, provided that, on default in the payment of the interest, the trustee "should, upon the request in writing of the person or persons holding a majority of said bonds, proceed to sell the property." The plaintiff, in a suit to foreclose, did not own a majority of the bonds, but the suit was against the company and the trustee, and other bondholders of their own motion intervened and were made parties. *Held*, that all other bondholders were represented by the trustee, and in the absence of bad faith on his part or a showing that he was not acting for the protection of their interests, they had no right to be made parties to the action, and whatever binds him also binds them.

2. ————: ————: **DEFAULT IN INTEREST ONLY.** A clause in a deed of trust which authorizes a foreclosure on default for thirty days in the payment of coupon interest notes, is a valid provision and self-executing for the purpose of enforcing the mortgage security, and justifies a decree of foreclosure whether the principal debt is due or not.

3. ————: ————: **DEFAULT IN PAYING TAXES AND OTHER DEBTS.** So also is a clause that provides for foreclosure in case the mortgagor does not pay taxes and benefit assessments. So also is a provision that the proceeds of the bonds shall be used in the payment of prior liens or mortgages. Breaches in any of the contract provisions authorize a foreclosure.

4. ————: ————: **FOR FULL AMOUNT OF DEBT.** If a deed of trust provides for foreclosure in case of failure to pay a part of the debt when it becomes due, the court may decree the sale of the property for the full amount of the debt actually created, with interest, whether it is all due or not. And if at the sale the property brings more than the part of the debt for which it is sold, the court will administer the fund according to the rights of the holders of all securities, whether the proceeding be by foreclosure or creditor's bill.

*NOTE—Decided December 19, 1899. Motion for rehearing filed; overruled February 20, 1900.

5. ———: ———: APPOINTMENT OF RECEIVER: WAIVER  Where no exceptions were made to the appointment of a receiver of the mortgaged property, and the application for vacating the order appointing him was not made for more than a year thereafter, during which time all parties participated in the foreclosure proceeding, it will not be held that the appointment was erroneous, for two reasons: First, because the application for vacating the order was not made in time; and second, because the record does not show what was done with it, it being a matter of exception.

6. ———: ———: ———: EARNINGS IN INTERIM.  Where the decree provides for a proper application of all earnings received by the receiver prior to the foreclosure sale, which came into his hands both prior and subsequent to his appointment, it is not proper to require as a condition for the foreclosure sale that the parties who applied for the receiver shall place the company in the condition in which it was when the receivership was asked for.

7. ———: ———: ———: ———: RECEIVER:  TRESPASSER. Neither the receiver appointed to take charge of a railroad, nor the party at whose instance he was appointed, is a trespasser, unless the order appointing the receiver is void, and that being the case, if the order is valid, the foreclosure of a mortgage can not be postponed until they turn over all the earnings received while the receivership lasted.

8. **Evidence:** OPINION.  Evidence which is a mere matter of opinion is not admissible for any purpose.

9. **Deed of Trust:** FORECLOSURE: PAYMENT.  A holder of part of the mortgage debt, if a purchaser of the whole property at the foreclosure sale, may set off his debt against his bid.

10. ———: ———: RIGHT TO INTERVENE.  Where one of a number of bondholders brings suit for foreclosure of a deed of trust securing the payment of the bonds, and sues for himself and in behalf of all bondholders, it is proper to permit such other bondholders to intervene.

11. ———: ———: SALE BY SPECIAL COMMISSIONER.  Equity courts have the power to appoint a special commissioner to make the sale of property, in a proceeding to foreclose a deed of trust.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood*, Judge.

AFFIRMED.

Rumsey v. Peoples Ry. Co.

*M. Kinealy, T. J. Rowe* and *C. H. Krum* for appellant.

(1)   The final decree is erroneous in foreclosing the third deed of trust and ordering a sale for the full amount of the bonds and interest, secured by the third deed of trust, and actually issued.   Rumsey v. Peoples Railway Co., 144 Mo. 189; Lacoss v. Keegan, 2 Ind. 406; King v. Longworth, 7 Ohio 231; Union Trust Co. v. Railroad, 5 Dill. 1; Taggart v. San Antonio Ridge D. & M. Co., 18 Cal. 460; Haynes v. Searchrest, 13 Ia. 455; Hunt v. Dohrs, 39 Cal. 304; Railroad v. Fosdick, 106 U. S. 47.   (a)   No bondholder can declare another's bond due.   Mallory v. West Shore H. R. R. Co., 3 Jones & S. 174; Marine Bank v. Internatl. Bk., 9 Wis. 66.   (b)   The clause in the deed of trust, declaring the bonds due on default of payment of one coupon for thirty days is not self-executing, and does not justify a decree of foreclosure for the full amount of the bonds.   Hawes v. Mulholland, 78 Mo. App. 493; Owings v. McKenzie, 133 Mo. 323; Woltz v. Parker, 134 Mo. 458; Philips v. Bailey, 62 Mo. 639; Whelan v. Riley, 61 Mo. 565; Railroad v. Sprague, 103 U. S. 756; Railroad v. Fosdick, 106 U. S. 75.   (2) The order appointing the receiver in this case was void, and the decree is erroneous in appropriating the income and earnings of the Peoples Railway Company, collected by the receiver appointed under that order, to the payment of the coupons, bonds or intervening claims.   State ex rel. v. Ross, 122 Mo. 435; Whitney v. Bank, 71 Miss. 1017; Railroad v. Jewett, 37 Oh. St. 469; Verplank v. Ins. Co., 2 Paige 438; Turgeau v. Brady, 24 La. Ann. 349; Pacific R. R. Co. v. Mo. P. R. Co., 111 U. S. 505.   (a)   The appointment of a receiver is not due process of law.   Huber v. Riley, 53 Pa. St. 112; Foster v. Goddard, 66 U. S. 518; Lowrey v. Rainwater, 70 Mo. 157; Crockett v. Lee, 20 U. S. 522; Bailey v. Rider, 10 N. Y. 363; Windsor v. McVeigh, 93 U. S. 274; Pennoyer v. Neff, 95 U. S. 714.   (b)   Without a valid order

for the appointment of a receiver, neither the court nor the receiver can take the income or earnings of the company, or appropriate them for the payment of its bonds, coupons or debts.    Freedmen's Savings & Trust Co. v. Shepard, 127 U. S. 494; Gillman v. Ill. & M. Tel. Co., 91 U. S. 603; Railroad v. Cowdrey, 78 U. S. 459; American Br. Co. v. Heidebach, 94 U. S. 794; Kountze v. Omaha Hotel Co., 107 U. S. 378; Teal v. Walker, 111 U. S. 242; Grant v. Phœnix L. Ins. Co., 121 U. S. 717; Dow v. Railroad, 124 U. S. 652; Sage v. Railroad, 125 U. S. 361; In re Life Ass'n of America, 96 Mo. 632; Fontaine v. Schulenberg & B. L. Co., 109 Mo. 64; White v. Wear, 4 Mo. App. 341; Armour Packing Co. v. Wols, 59 Mo. App. 665.    (c)    The entire amount collected by the receiver should be accounted for, without deduction.    3 Southerl. on Damages (2 Ed.), secs. 1105, 1106.    (3) Mr. Lewis M. Rumsey is not entitled to have a decree of foreclosure in this suit.    He, at least, should first be required to place defendant, Peoples Railway Company, in the condition it was on March 6, 1897, before the filing of the petition in this cause.    1 Pomeroy Eq. Jr. Pru. (2 Ed.), sec. 397; Lewis v. Holdredge, 76 N. E. Rep. 890; Angle v. Railroad, 151 U. S. 1; Farmers Loan & Trust Co. v. Railroad, 150 N. Y. 410; Gruhn v. Richardson, 128 Ill. 186; Farrow v. Holland Trust Co., 74 Hun. 600; Cutter v. Babcock, 81 Wis. 195; Bein v. Heath, 6 How. 247; Moore v. Crawford, 130 U. S. 122; Railroad v. City Nat. Bank, 56 Oh. St. 351.    (4)    The final decree is erroneous in finding and decreeing that any of the so-called interveners, the German-American Bank et al., admitted parties to the suit, was a party plaintiff in this suit, or, as such, was entitled to a decree of foreclosure for the amount of the bonds and the interest thereon held by it or him.    11 Ency. Pl. & Pr., p. 509.    (5)    The decree in ordering a sale by a special commissioner is erroneous and void.    Lord v. Johnson, 102 Mo. 680; Hannah v. Davis, 112 Mo. 608; Rumsey v. Peoples R'y

Co., 144 Mo. 189. (6) The decree is erroneous and void, inasmuch as it does not order a sale for cash, and impairs the obligation of the contract in the deed of trust. Wood's Ex. v. Krebs, 33 Grat. (Va.) 694; Const. U. S., art. 1, sec. 10.

*Noble & Shields, A. Arnstein* and *Boyle, Priest & Lehmann* for respondent.

(1) This action was in equity for foreclosure and sale, and as such could be prosecuted by one or more bondholders for himself, themselves and others whose bonds were secured by the mortgage deed of trust. (a) It was an action in equity, and as such was not affected by the provisions of the state statute relating to "mortgages and deeds of trust." Rumsey v. Peoples R'y Co., 144 Mo. 188; Riley v. McCord, 24 Mo. 268; Keith, etc. Co. v. Bingham, 97 Mo. 212; Wolff v. Ward, 104 Mo. 127; Hannah v. Davis, 112 Mo. 599; State ex rel. v. Ross, 122 Mo. 435; Brein v. Fleming, 135 Mo. 604; Trust Co. v. McDonald, 146 Mo. 479. (b) A bondholder has the right to bring the action for himself and other bondholders, who might join with him therein, the trustee refusing to sell or sue. Rumsey v. Peoples R'y Co., 144 Mo. 189; State ex rel. v. Ross, 122 Mo. 435; Carter v. City of N. O., 19 Fed. Rep. 659. (c) On application the intervening bondholders were properly admitted and their interests protected. Ins. Co. v. Salisbury, 130 Mass. 303. (d) The interevening bondholders had been admitted and made parties by order of the court below when the defendant company filed its original answer; and their presence was recognized and their rights passed upon when the first appeal was prosecuted. Rumsey v. Peoples R'y Co., 144 Mo. 189. (e) The other bondholders, if any further representation for them was necessary in the action, were represented by the trustee, who had not resigned, held the legal title, was a party defendant, and had their interests fully protected in the decree. Oxley Stave Co. v. Butler Co., 121 Mo. 614;

Land Co. v. Peck, 112 Ill. 408; Corcoran v. Chesapeake, etc. Co., 94 U. S. 741; Richter v. Jerome, 123 U. S. 233; Kneeland v. Luce, 141 U. S. 491; Kent v. Lake Superior, etc., Co., 144 U. S. 75; Farmers' Loan & Trust Co. v. Kansas City, etc., 53 Fed. Rep. 182; Elwell v. Fosdick, 134 U. S. 500. (2) The mortgage deed of trust was properly foreclosed and sale of the property decreed for full amount of the bonds actually issued with interest. (a) It was "distinctly understood and agreed" in the mortgage deed of trust that failure to pay any one of said coupons for thirty days, should cause all of said bonds to become immediately due and payable. Also that on a failure to pay taxes and assessments when required by law to be paid, the holders may consider the bonds and each of them due and payable. Also if any of the bonds or coupons become due and remain unpaid for thirty days; or if (mortgagor) fails or neglects to pay taxes or assessments when due upon a request in writing of those holding a majority of the bonds and coupons, the trustee shall proceed to sell. Also if the company failed to set apart 200 of the bonds to retire and cancel the first and second mortgage bonds, there would be a forfeiture. (b) All these provisions were, in the petition, asserted as causes for foreclosure and sale, with appropriate averments, and the failure of the defendant company in each particular was not only proven, but admitted. (3) Mortgages may be foreclosed for whole debt on failure to pay instalments, if it is so agreed. Howell v. Railroad, 94 U. S. 463; Macon, etc. Co. v. Georgia, etc., Co., 63 Ga. 103; Wriner v. Atlantic, etc., Co., 2 Woods (U. S.) 409; Darrow v. Scullin, 19 Kan. 57; 9 Ency. of Plead. and Prac., p. 428; Olcott v. Bynum, 17 Wall. 441; Noonan v. Lee, 2 Black (U. S.) 509; Mallory v. Railroad, 3 Jones & S. (N. Y.) 124; State ex rel. v. Ross, 122 Mo. 435. And this present case on former appeal, Rumsey v. Peoples, etc., Co., 144 Mo. 189. These provisions accelerated the maturity of the debt for the purposes of foreclosure and

sale. Morgan v. Martien, 32 Mo. 438; Mason v. Bernard, 36 Mo. 384; Noell v. Gains, 68 Mo. 649; Owens v. McKenzie, 133 Mo. 323; Building & Investment Co. v. Dunworth, 146 Mo. 361. (4) It is a principle in equity that if on sale duly had for even only a portion of the debt that is due, the court acquires a fund as proceeds, it will administer that fund according to the rights of all the holders of the securities, whether for foreclosure or on creditors' bill. Chicago, etc., Co. v. Fosdick, 106 U. S. 47; Olcott v. Bynum, 17 Wall. 44; Noonan v. Lee, 2 Black (U. S.) 509; King v. Longworth, 7 Ohio 251; Hollins v. Briarfield, etc.,Co. 150 U. S. 380.

BURGESS, J.—This case was before this court on a former occasion, having been brought by writ of error which was sued out by the Peoples Railway Company, and will be found reported in 144 Mo. 175, where a full and clear statement of the facts up to that time may be found.

It was then reversed and remanded to be tried in accordance with the views expressed in the opinion of the court.

At the time the mandate was received by the clerk of the court below there was pending in the cause and undisposed of a motion to remove the receiver, Charles Green, who had been appointed and took charge of the property in March, 1897, which was sustained on April 27, 1898, and F. B. Brownell appointed in his place.

From the appointment of Charles Green as receiver on March 6, 1897, to May 27, 1898, Michael Kinealy appeared and acted as counsel for Mr. Green and Kinealy & Kinealy acted as counsel for the defendant railway company. In the application for a change of venue, however, filed May 27, 1898, Michael Kinealy appeared for the Peoples Railway Company, and in all subsequent proceedings has represented that company.

On the day of the filing of the mandate of the Supreme

Court, the defendant railway company asked for change of venue, and the case was transferred to Division No. 6, before Judge Horatio D. Wood. On the 3d of June, 1898, the defendant railway company filed a motion to strike out the intervening petition of the German-American Bank and others, and to set aside the order permitting same to be filed, which was overruled July 26, 1898.

On the 30th of July, Michael Kinealy and T. J. Rowe, as attorneys for defendant railway company, filed a demurrer to the intervening petition of the German-American Bank et al., which was overruled.

On June 24, 1898, more than a year and three months after it was served with summons in this case, and more than a year and two months after it filed its original answer herein, and after Charles Green, who was president of the defendant company when the suit was brought, and on whom service of summons was had as such president, but after he had been removed as receiver and Brownell appointed in his place, the defendant railway company, by its attorneys, M. Kinealy and T. J. Rowe, filed its amended answer admitting that it was a Missouri corporation; that C. C. Maffitt was trustee in the deed of trust described in the petition; that it was authorized by its charter and ordinances to maintain a street railway; that it made its first, second and third deeds of trust mentioned in the petition; that it executed the bonds mentioned in the petition; and at the time of filing said petition there was a default in the interest of the bonds secured by the deed of trust to C. C. Maffitt; that it was indebted on open account for materials, labor and other matters; that Maffitt as trustee, was not authorized under said deed of trust to enforce its provisions until required in writing by the holders of a majority of said bonds and coupons, and denied every other allegation in the petition.

The answer then sets up that in the latter part of April, 1896, it was indebted to John A. Roebling & Sons in the sum

of $84,000 for railroad supplies, and that Charles Green, then the largest stockholder and president of the defendant company, in October, 1896, without the knowledge of defendant, but with the knowledge of plaintiff Rumsey, entered into a contract with F. B. Roebling, Thomas C. Barr and E. J. Moore, calling themselves a syndicate, for the purpose of forming a corporation to obtain franchises, rights and property of the defendant company, and of the Fourth Street and Arsenal Railway Company, whereby it was agreed that the new corporation should be called the Peoples Traction Company, with a capital of $2,000,000 and a bond issue of $2,000,000; that $1,050,000 should be applied to purchase the bonds of the defendant company and of the Fourth Street Railway; that $450,000 of said bonds were to be delivered to the syndicate to pay Roebling's debt and to equip the said railway; that to carry out the plans the People Traction Company might adopt such course as it deemed fit, and that $1,000,000 of the stock of the Peoples Railway Company and $450,000 of the bonds should be delivered to the syndicate to equip and put said railway into operation with electric power; that plaintiff Rumsey agreed to become a party to said scheme in consideration of the exchange of his third mortgage bonds for bonds in the Peoples Traction Company and other benefits unknown to defendant; and that for the purpose of carrying out said plan that Rumsey should bring a suit of foreclosure, and in order to prevent interference by outside creditors, and to prevent payment of interest on its bonds, Rumsey would have a receiver appointed, and that Charles Green, as president of the defendant, would employ attorneys to represent this defendant in said foreclosure suit, and that no substantial defense would be made to said proceedings, that a sale of the defendant's property would be had, and the parties to the agreement would obtain options to obtain control of said third mortgage bonds, that at that time the defendant owned a large amount of property not

covered by any of the deeds of trust, that it had ample credit
to obtain money to pay its bonds, but to insure the accom-
plishment of the plan it was agreed by the parties, including
Rumsey, that a default should be made and continued in the
payment of interest on said third mortgage bonds, that Rum-
sey owned a number of said bonds, and had under his control
others belonging to his relatives, but the aggregate amount
of the bonds so owned and controlled by Rumsey did not
amount to more than one-fourth of the total number secured
by the deed of trust; that when plaintiff Rumsey became a
party to the agreement he had no intention of carrying it out
in good faith, but formed a scheme of his own to make use of
the plans of his associates, in order to obtain sale of the
property and to purchase the same for his own use, and he
secretly combined with other bondholders, unknown to de-
fendant, to control the said remaining bonds in opposition
to said syndicate; but, as he knew he could not carry out this
plan unless the non-resistance of defendant company was
assured, he continued to operate with the syndicate and Green
ostensibly for the purpose of carrying out the agreement until
final decree of foreclosure; that, in pursuance of the above
agreement, Rumsey caused the petition in this case to be filed
and a summons issued, which was served on Green, and pro-
cured the said Green, then president of defendant company,
to employ attorneys to represent this defendant in this case;
that said attorneys, believing they were fully authorized to
act as attorneys of defendant, in good faith filed an answer
under the direction of Green, and "thereafter said decree was
rendered in this cause in accordance with said agreement and
arrangement and without any dissent on the part of this
defendant, to whom in truth and in fact all the foregoing
acts and agreements were unknown". That after filing said
answer and before the rendition of said decree, Green became
aware of the counter-plan of Rumsey to secure the property
for himself, and an appeal was taken from said decree by

defendant to the Supreme Court of the State; that defendant did not become aware of Rumsey's schemes, etc., until after the case was submitted for discussion in the Supreme Court. That no part of the earnings or income of the defendant was pledged by any of said deeds of trust, but in order to prevent defendant from paying the interest then due on its past coupons, it was arranged between the parties to said agreement, including Rumsey, that an order should be obtained appointing a receiver to take possession of the property of defendant and all its earnings, whether the same was covered by any of said deeds of trust or not, that a default on the interest should not only be made but should be continued to prevent serious competition in or interference with the parties to such agreement, and that said order appointing said receiver was so worded in accordance with said agreement; that Rumsey continued ostensibly to aid the syndicate and Green in said plan, but secretly had made arrangements to secure the control of the bonds for himself with the intention of purchasing the property on his own behalf, and procured an order appointing a receiver for the purpose; that the receiver was appointed and took possession of all of the property of defendant, mortgaged and unmortgaged, and deprived defendant of any means of paying its interest on its indebtedness.

The answer further states that the defendant is ready and willing and hereby offers to pay to plaintiff the interest due on any of said bonds secured by said deed of trust to said Maffitt, if it can obtain control and management of its property taken by the receiver and to pay any balance, if any, which may be adjudged against it on the accounting hereinafter prayed for; that said property largely exceeds all interest due on its bonds; that but three judgments not exceeding $6,300, which defendant is advised will be reversed, have been obtained against defendant; that by reason of the unlawful acts of Rumsey, the defendant has

been greatly injured and deprived of its property, earnings and income to the amount of over $300,000, and has been damaged to at least $200,000. Wherefore defendant prays that an accounting be taken of the amount of interest due on any of said third mortgage bonds held by plaintiff, of the amount of property. taken by said receiver, and of the other damages suffered by defendant, and a balance struck and plaintiff ordered and decreed to pay the same over to defendant, and for other equitable relief.

On July 1, 1898, the plaintiffs filed a reply denying all the allegations of this amended answer.

Both parties introduced evidence tending to sustain their respective theories of the case, and upon that evidence the trial court made a finding of facts. It is substantially as follows:

"And the court doth . . . . . . . find that the defendant, the Peoples Railway Company, is a corporation duly organized under the laws of the state of Missouri, and was at the time mentioned in said petition, and still is, duly authorized by its charter, by the laws of the state of Missouri, and by the ordinances of the city of St. Louis, to construct, maintain and operate a street railway for the carriage of passengers in the city of St. Louis, state of Missouri, and that in pursuance of such authority it had before the beginning of said suit constructed a line of railway and engaged in the transportation of passengers on certain streets in said city.

"That the defendant, C. C. Maffitt, is the trustee in a certain mortgage deed of trust, known and hereinafter spoken of as the third mortgage deed of trust, executed and recorded as hereinafter stated.

"That on the 10th day of July, 1889, the defendant, the Peoples Railway Company under the description of 'party of the first part' made, executed and delivered its certain mortgage deed of trust, the same being the one already spoken of herein as the third mortgage deed of trust, conveying to the

defendant, C. C. Maffitt, as trustee, under the description of 'party of the second part,' for the benefit of the holders of the series of bonds intended thereby to be secured under the description of 'parties of the third part,' the premises described in said deed as follows, to wit: [Here follows a description of the property.]

"That said conveyance was made in trust, to secure 1,000 bonds dated July 10, 1889, for one thousand dollars, each numbered from one to one thousand, both numbers included, and bearing interest at the rate of six per cent per annum payable on the first days of January and July in each year, and having coupons attached, representing the said semi-annual interest; the principal and interest of said bonds being payable in lawful money of the United States of America at the American Exchange National Bank of the city of New York, in the state of New York, and the principal of said bonds being payable on the 1st day of July, 1904, subject, however, to the express condition that the obligor therein should have the right to pay said principal at any time on or after the 1st day of July, 1899, by first giving thirty days' notice of its intention so to do by publishing such notice in a daily newspaper published in the city of St. Louis, Missouri, and which bonds are those hereinafter found secured by said deed.

"That said third mortgage deed of trust was duly recorded in the office of the recorder of deeds of the city of St. Louis on the 10th day of July, 1889, in book 917, at page 27 and following.

"That said third mortgage deed of trust was made in trust upon and for the faithful performance and fulfillment of the following covenants therein recited and undertaken to be performed and fulfilled by the defendant, the Peoples Railway Company, to wit:

"1. That the said defendant railway company covenanted and agreed to and with the party of the second part

(said C. C. Maffitt, trustee), and to and with the person or persons who might from time to time, become the holder or holders of said bonds and the coupons thereto annexed, that it would well and truly pay the said bonds, and the interest due and payable thereon, according to the true tenor thereof, and,

"2. Would cause all legal taxes and assessments, general and special, and whether national, state or municipal, which might be imposed upon the premises, and property in said third mortgage deed described, to be paid within the time required by law, until said bonds and the interest thereon should be fully paid, and that in case it failed or neglected to pay said taxes or assessments when the same were by law required to be paid, then, and in such event, the holders of said bonds or coupons might, at their option, consider said bonds, and each of them, due and payable, though not then due and payable by the tenor and purport thereof; and might require the said C. C. Maffit, trustee, or his successor or successors in trust, to sell the property in said deed described as in said mortgage deed provided.

"3.   That said defendant railway company would set apart 200 of the said 1,000 bonds secured by said mortgage deed of trust, and use the same only and exclusively, by sale or exchange, or both, in retiring and cancelling at their maturity, or sooner, if deemed expedient by the board of directors of the said railway company, the 200 bonds of the aggregate par or face value of $200,000, theretofore made and issued by said defendant railway company and then outstanding.

"4.   That if any or either of said coupons or bonds secured by said third mortgage deed should become due and remain unpaid for the space of thirty days after same became due and payable, or if the said defendant railway company failed or neglected to pay said taxes or assessments when due and payable, or to refund on demand to the holder or

holders of said bonds or coupons, any sums properly paid by them for said taxes with interest thereon, as in said mortgage deed provided, or should fail or neglect to retire and cancel at the maturity, or sooner if deemed expedient by the board of directors of said defendant company, the said 200 bonds theretofore made and issued by it and then outstanding, then and in either of said events, the said third mortgage deed should remain in full force and effect and the said defendant, C. C. Maffitt (or in the event of his death or absence from the city of St. Louis, or refusal or inability or neglect to act, then the sheriff for the time being of the city of St. Louis), should, upon the request in writing of the person or persons holding a majority of said bonds and coupons, proceed to sell the property described in said deed of trust for the purposes of said trust in the manner provided in said third mortgage deed.

"5. That it was distinctly understood and agreed in said third mortgage deed, by and between the parties thereto, that a failure to pay any one of said coupons for the space of thirty days after the same became due and payable should cause all of said bonds to become immediately due and payable though not then due by the terms, tenor or effect thereof.

"6. That it was further covenanted and agreed in said third mortgage deed of trust that in case of any default of the said defendant railway company in performing the several covenants, agreements and stipulations of said third mortgage deed to be by it kept and performed, then the method for foreclosure by sale in said deed provided should not be deemed or taken to be exclusive, but the said C. C. Maffitt, trustee, and the holders of said third mortgage bonds, should be at liberty to resort to all legal and equitable remedies which then existed or might be provided by law.

"And the court doth further find, that on said 10th day of July, 1889, in pursuance to said third mortgage deed of trust, the defendant, the Peoples Railway Company, made and

executed one thousand bonds described in and secured by said third mortgage deed of trust, each bond being for the principal sum of one thousand dollars, the entire series of said bonds being numbered from one to one thousand, both numbers inclusive, being for the aggregate principal sum of one million dollars, each of said bonds bearing date, July 10, 1889, and being payable on the 1st day of July, A. D. 1904, at the American Exchange National Bank in the city of New York, in lawful money of the United States of America, with interest at the rate of six per cent per annum, payable half yearly on the first days of January and July respectively in each year, at said bank, on presentation and surrender of the interest coupons of thirty dollars each, annexed to said bonds and payable to bearer on said first days of January and July in each year till said bonds become due. That said bonds were issued upon the express condition recited in each of said bonds that said Peoples Railway Company should have the right to pay the same at any time on or after the first day of July, 1899, by first giving thirty days' notice of its intention so to do by publishing such notice in a daily newspaper published in the city of St. Louis, Missouri, and at the end of said thirty days the bonds, unless presented for payment at said American Exchange National Bank, should cease to bear interest; that each of said bonds was authenticated by a certificate of the trustee as one of the bonds issued under said third mortgage deed of trust; that of this series of one thousand third mortgage bonds, eight hundred bonds of the aggregate principal sum of eight hundred thousand dollars, were by the defendant railway company put upon the market, negotiated and sold to the plaintiff, Rumsey, and to the intervening bondholders herein, and to other persons to the court unknown, but that two hundred of said bonds aggregating the principal sum of two hundred thousand dollars, which were executed for the purpose of taking up and liquidating the bonds secured by the first and second mort-

gages theretofore issued by said defendant railway company have never been issued or used for the purpose for which they were alone made.

"And the court doth further find that the defendant, the Peoples Railway Company, has failed to keep and perform its covenants in said third mortgage deed in this, to wit: That it has not paid some of the semiannual interest accruing upon the eight hundred of said bonds which were negotiated or sold, but that on the first day of July, 1896, the coupons of said bonds held by Lewis M. Rumsey, plaintiff, Leo Levis and James Campbell, trustee, intervening plaintiffs, representing the interest which accrued thereon during the then preceding six months, were not paid when the same became due, and the said defendant railway company did not deposit the money to pay said coupons at the place recited in said bonds and coupons, to wit, the American Exchange National Bank, in the city of New York and state of New York, at or before the time when said coupons became due or at any other time, but the defendant railway company failed and refused to pay the same; though they were requested to do so by the plaintiffs and the other holders of said coupons, and doth still so fail and refuse to pay the same; that on the first day of January, 1897, another series of the coupons of said bonds, representing the interest which had accrued thereon during the then preceding six months, including the coupons of the bonds held by the plaintiff, Rumsey, and the intervening plaintiffs, were not paid when the same became due any payable, and the defendant railway company did not deposit the money to pay the same at the place recited in said bonds and coupons, to wit, the American Exchange National Bank, in the city of New York, at or before the time said coupons became due or at any other time, and that the said defendant railway company failed and refused to pay the same, though it was requested to so do by the plaintiffs

and the other holders of said coupons, and has ever since failed and refused to pay said interest coupons.

"Second. That the defendant railway company at the time of bringing this suit had not well and truly paid all legal taxes and assessments, general or special, lawfully assessed against the property so conveyed in said third mortgage deed of trust, within the time required by law, but that a large sum, which, together with the penalties lawfully accruing thereon, amounting to the aggregate of $24,442.72, remained due and unpaid, which taxes are under the laws of Missouri a first lien upon the property conveyed in the said third mortgage deed of trust, and the accumulation of which taxes is depreciating the security of the bondholders under said third mortgage deed of trust, including the plaintiffs herein.

"Third. That the defendant railway company, although it set apart 200 of said 1,000 bonds secured by said third mortgage deed of trust, has wholly failed by the use of same, or otherwise, to take up and liquidate any of the first mortgage bonds and second mortgage bonds of said defendant railway company; that all of said first mortgage bonds amounting to $125,000, and said second mortgage bonds, amounting to $75,000, remain outstanding, and that at the time this suit was brought, the said defendant railway company made default in the payment of interest on said bonds.

"Fourth. That the said defendant company failed and neglected to pay the coupons on said third mortgage bonds, due on the first day of January, 1897, for more than thirty days after the same became due and payable, according to the tenor and effect thereof, and said defendant railway company failed and neglected to pay said taxes or assessments within the time required by law, but the said coupons and the said taxes still remain due and unpaid.

"And the court doth further find that the plaintiff, Lewis M. Rumsey, and the intervening plaintiffs herein,

made their election that the said bonds held by them, and each of them, should be due and payable by reason of the failure of the defendant railway company to pay the legal taxes and assessments as aforesaid and to pay the interest accruing on said bonds as aforesaid.

"And the court doth further find that by reason of the provision in said deed of trust that a failure to pay any one of said coupons for the space of thirty days after the same should become due and payable, should cause all of said bonds to become immediately due and payable though not then due by the terms, tenor or effect thereof, and by reason of the failure of said defendant railway company to pay said coupons due January 1, 1897, for a space of thirty days thereafter, all of said third mortgage bonds became due and were immediately due and payable.

"And the court doth further find that the power granted to the defendant, C. C. Maffitt, the trustee under the said third mortgage deed of trust, to sell the property and franchises therein conveyed at public auction, could not at the time of bringing this suit be safely and conveniently, and was not, exercised in accordance with the terms of said deed of trust, for the reason that said third mortgage bondholders were widely scattered and that the consent of the persons holding a majority of said bonds and coupons could not be obtained to make a request in writing upon the said C. C. Maffitt, trustee, to proceed to sell the property under the provisions of said deed of trust, and that without the consent of a majority in value of the holders of said bonds and coupons the said trustee declined to proceed either to advertise and sell the property and franchises conveyed by said deed of trust or to bring suit to foreclose said deed of trust.

"And the court doth further find that at the time of bringing this suit the plaintiff Rumsey was the lawful holder of two hundred and thirty of said third mortgage bonds, aggregating the principal sum of $230,000. That said bonds

are numbered respectively as follows: Number 86 and the consecutive numbers thereafter to and including number 188; number 327 and the consecutive numbers thereafter to and including number 336; numbers 545, 546; number 190 and the consecutive numbers thereafter to and including number 199; number 635 and the consecutive numbers thereafter to and including number 638; number 569; number 201 and the consecutive numbers thereafter to and including number 300, making in all said 230 bonds.

"That there is due said Rumsey for interest coupons on said bonds due July 1, 1896, the sum of six thousand nine hundred dollars, and the further sum of $972.90 interest on said amount from the said first day of July, 1896, to the date of this decree, at the rate of six per cent per annum; that there is due to him also the interest coupons on said bonds held by him due January 1, 1897, amounting to six thousand nine hundred dollars, together with interest thereon from the said first day of January, 1897, to the date of this decree at the rate of six per cent per annum, amounting to $765.90, and the further sum of $25,530 interest on said bonds from January 1, 1897, at the rate of six per cent per annum to the date of this decree. That the aggregate amount of bonds, coupons and interest now due to said Lewis M. Rumsey is $271,068.80.

"That the said German-American Bank at the time of bringing this suit was the lawful holder of fifty of said third mortgage bonds, aggregating the principal sum of fifty thousand dollars. That said bonds are numbered respectively as follows: Numbers 326, 343, number 401 and the consecutive numbers thereafter to and including number 413; numbers 563, 564, 570, 571, number 584 and the consecutive numbers thereafter to and including number 593; numbers 595, 596, 598, and 599, number 619 and the consecutive numbers thereafter to and including number 634. That there is due to said German-American Bank for interest cou-

pons on said bonds due January 1, 1897, amounting to fifteen hundred dollars, together with interest thereon from the said first day of January, 1897, to the date of this decree at the rate of six per cent per annum, amounting to $166.50, and the further sum of $5,550 interest on said bonds from January 1, 1897, at the rate of six per cent per annum to date of this decree. That the aggregate amount of bonds, coupons and interest now due to said German-American Bank is $57,216.50.

"That the said William W. Booth at the time of bringing this suit was the lawful holder of twenty-two of said third mortgage bonds, aggregating the principal sum of twenty-two thousand dollars. That said bonds are numbered respectively 775, 776, 777, 778, 779, 780, 781, 782, 783, 319, 320, 321, 322, 316, 317, 318, 323, 324, 325, 340, 344, 345. That there is due to said Booth for interest coupons on said bonds due January 1, 1897, amounting to six hundred and sixty dollars , together with interest thereon from the said first day of January, 1897, to the date of this decree, at the rate of six per cent per annum, amounting to $73.26, and the further sum of $2,442, interest on said bonds from January 1, 1897, at the rate of six per cent per annum to the date of this decree. That the aggregate amount of bonds, coupons and interest now due to said William W. Booth is $25,175.26.

"That the said Henry Nennecke at the time of bringing this suit was the lawful holder of eight of said third mortgage bonds aggregating the principal sum of eight thousand dollars. That said bonds are numbered respectively 600, 601, 602, 603, 604, 605, 443, 445. That there is due to said Henry Nennecke for interest coupons on said bonds due January 1, 1897, amounting to $240, together with interest thereon from the first day of January, 1897, to the date of this decree at the rate of six per cent per annum amounting to $26.64, and the further sum of $888 interest on said bonds from January 1, 1897, at the rate of six per cent per annum

to the date of this decree. That the aggregate amount of bonds, coupons and interest now due to said Henry Nennecke is $9,154.64.

"That the said Fred W. Prange, trustee, at the time of bringing this suit was the lawful holder of seventy-five of said third mortgage bonds, aggregating the principal sum of seventy-five thousand dollars. That said bonds were numbered respectively 451 and the consecutive numbers thereafter down to and including number 500; number 586 and the consecutive numbers thereafter down to and including number 400; number 376 and the consecutive numbers thereafter down to and including number 385. That there is due to said Fred W. Prange, trustee, for interest coupons on said bonds, due January 1, 1897, amounting to $2,250, together with interest thereon from the said first day of January, 1897, to the date of this decree, at the rate of six per cent per annum, amounting to $249.75, and the further sum of $8,325 interest on said bonds, from January 1, 1897, at the rate of six per cent per annum to the date of this decree. That the aggregate amount of bonds, coupons and interest now due to Fred W. Prange, trustee, is $85,824.75.

"That the said James Campbell at the time of bringing this suit, was the lawful holder of fifteen of said third mortgage bonds, aggregating the principal sum of $15,000. The said bonds are numbered respectively, 355, 356, 357, 789, 790, 791, 792, 307, 308, 85, 444, 795, 520, 523, 537. That there is due to said James Campbell for interest coupons on said bonds, due January 1, 1897, amounting to $450, together with interest thereon from the said first day of January, 1897, to the date of this decree, at the rate of six per cent per annum, amounting to $49.95, and the further sum of $1,665 interest on said bonds from January 1, 1897, at the rate of six per cent per annum to the date of this decree. That the aggregate amount of bonds, coupons and interest now due to said James Campbell is $17,164.95.

"That the said James Campbell, trustee, at the time of bringing this suit, was the lawful holder of twenty-eight of said third mortgage bonds, aggregating the principal sum of twenty-eight thousand dollars; that said bonds are numbered respectively 531, 506, 764, 765, 341, 342, 303, 304, 305, 434, 435, 436, 572, 573, 574, 532, 535, 61, 62, 63, 301, 306, 615, 516, 517, 518, 533, 528. That there is due to said James Campbell, trustee, for interest coupons on said bonds due July 1, 1896, the sum of $30 and the further sum of $4.23 interest on said amount from the first day of July 1896, to the date of this decree at the rate of six per cent per annum; that there is due to him also the interest coupons on said bonds held by him due January 1, 1897, amounting to $840, together with interest thereon from the said first day of January, 1897, to the date of this decree at the rate of six per cent per annum, amounting to $93.24, and the further sum of $3,108, interest on said bonds from January 1, 1897, at the rate of six per cent per annum till the date of this decree; that the aggregate amount of bonds, coupons and interest now due to said James Campbell, trustee, is $32,075.47.

"That the said John W. Kaiser, at the time of bringing this suit, was the lawful holder of five of said third mortgage bonds, aggregating the principal sum of $5,000. That said bonds are numbered respectively, 501, 502, 503, 504, 505. That there is due to said John W. Kaiser, for interest coupons on January 1, 1897, amounting to $150 together with interest thereon, from the said first day of January, 1897, to the date of this decree at the rate of six per cent per annum amounting to $16.65, and the further sum of $555 interest on said bonds, from January 1, 1897, at the rate of six per cent per annum to the date of this decree. That the aggregate amount of bonds, coupons and interest now due to said John W. Kaiser is $5,721.65.

"That the said Leo Levis, at the time of bringing this

suit, was the lawful holder of three of said third mortgage bonds aggregating the principal sum of three thousand dollars. That said bonds are numbered respectively 79, 80 and 81. That there is due to said Leo Levis, for interest coupons on said bonds due July 1, 1896, the sum of $90, and the further sum of $12.69, interest on said amount from the 1st day of July, 1896, to the date of this decree, at the rate of six per cent per annum; that there is due to him also the interest coupons on said bonds held by him due January 1, 1897, amounting to $90, together with interest thereon from the said first day of January, 1897, to the date of this decree at the rate of six per cent per annum, amounting to $9.99 and the further sum of $333 interest on said bonds from January 1, 1897, at the rate of six per cent per annum to the date of this decree. That the aggregate amount of bonds coupons and interest now due to said Leo Levis is $3,535.68.

"That the said Wernse & Dieckman, at the time of bringing this suit, were the lawful holders of three of said third mortgage bonds aggregating the principal sum of three thousand dollars. That said bonds are numbered respectively 440, 799, 438. That there is due to said Wernse & Dieckman for interest coupons on said bonds due January 1, 1897, amounting to $90, together with interest thereon from the said first day of January, 1897, to the date of this decree at the rate of six per cent per annum, amounting to $9.99 and the further sum of $333, interest on said bonds from January 1, 1897, at the rate of six per cent per annum to the date of this decree. That the aggregate amount of bonds, coupons and interest now due the said Wernse & Dieckman is $3,432.99.

"That the said Herman A. Haeussler, at the time of bringing this suit, was the lawful holder of seven of said third mortgage bonds aggregating the principal sum $7,000. That said bonds are numbered respectively 51, 52, 53, 752, 786, 54, 442. That there is due to said Herman A. Haeussler

for interest coupons on said bonds due January 1, 1897, amounting to $210, together with interest thereon from the said first day of January, 1897, to the date of this decree at the rate of six per cent per annum, amounting to $23.31, and the further sum of $777 interest on said bonds from the first day of January, 1897, at the rate of six per cent per annum to the date of this decree. That the aggregate amount of bonds, coupons and interest now due to said Herman A. Haeussler is $8,010.31.

"That the said Theresa Klein, at the time of the bringing of this suit, was the lawful holder of five of said third mortgage bonds, aggregating the principal sum of $5,000; that said bonds are numbered respectively 510, 511, 512, 513, 515. That there is due to said Theresa Klein for interest coupons on said bonds, due January 1, 1897, amounting to $150, together with interest thereon from the said first day of January, 1897, to the date of this decree at the rate of six per cent per annum, amounting to $16.65, and the further sum of $555 interest on said bonds from January 1, 1897, at the rate of six per cent per annum to the date of this decree. That the aggregate amount of bonds, coupons and interest now due to said Theresa Klein is $5,721.65.

And the court doth further find that since the institution of this suit, the plaintiff, Rumsey, and the intervening plaintiffs herein, have respectively assigned and transferred their said bonds and coupons to Lewis M. Rumsey, August Gehner and Charles Parsons, as trustees, and that said trustees and the plaintiffs herein have permitted said suit to proceed in the names of the original plaintiffs herein.

"And the court doth further find that at the time of bringing this suit the defendant, the Peoples Railway Company, was largely indebted to various parties on various accounts, known as its floating indebtedness to the amount of $65,783.07, and that the holders of said floating indebtedness have filed their respective intervening petitions herein,

asking this court to adjudicate their respective claims and to declare them as equitable liens herein. That said defendant railway company was also largely indebted to the state of Missouri and city of St. Louis for taxes, as hereinbefore stated, and in addition thereto was indebted to the city of St. Louis for a license tax for the privilege of running its cars over the streets of said city, and for a special tax on its cars in the amount of $15,000; and that judgment on various claims have been rendered against said defendant railway company in the circuit court for the city of St. Louis, Missouri, some of which had been appealed and others taken by a writ of error to the appellate courts, but which judgments had not been reversed and were still due and unpaid, all of which said indebtedness, the said defendant railway company was unable to pay, and it was then and still is wholly insolvent and unable to pay its said debts."

The court then rendered the following judgment, and decree:

"In consideration of the premises, executing the trust created by said third mortgage deed of trust for the benefit of all the holders of bonds and coupons under said third mortgage, and saving the rights of the holders of the bonds and coupons under all prior mortgages on said property, it is ordered, adjudged and decreed that the equity of redemption in said premises under said third mortgage deed of trust be foreclosed and that the said property rights and franchises be sold as hereinafter provided. That Charles C. Maffit is hereby appointed a special commissioner and authorized to sell the property described in said third mortgage deed of trust under this decree for the benefit of all persons interested therein and subject to the orders of this court. That said special commissioner shall forthwith advertise in the St. Louis Star, a newspaper published in the city of St. Louis, state of Missouri, for sixty consecutive days, that he, the said special commissioner, will on a day and hour fixed in said

notice, sell as an entirety and in one parcel or lot, at public vendue, at the east front door of the courthouse in the city of St. Louis, state of Missouri, all and singular the property rights and franchises hereinbefore described, as conveyed by said third mortgage deed of trust to the defendant, C. C. Maffit, trustee, to the highest and best bidder for cash; that at said sale the plaintiffs, intervenors or any one or more of the holders of the bonds or matured coupons under the third mortgage deed of trust may bid in the said property, rights and franchises, for the protection of his or their interests and may make payment of the purchase price at which said property, rights and franchises, may be sold to him or them in the bonds and matured coupons issued under said third mortgage deed of trust and held by him or them except to the amount which the court may order to be paid in cash under the conditions herein prescribed; and, further, that said commissioners may, to prevent sacrifice of said property, adjourn the sale from time to time and may re-advertise and re-sell the property in the manner and upon the terms and conditions herein set forth, reporting his action to the court; and no bid shall be received for said property at a less amount than $200,000, and upon the sale being made the successful bidder shall forthwith deposit with the said special commissioner $25,000 in cash, or certified check for that amount, to be applied as a payment upon said purchase price, and if said deposit is not made forthwith the said special commissioner shall at once proceed to re-sell said property, rights and franchises under the original advertisement. The said special commissioner shall at once report the said sale to this court, which reserves to itself the right to approve or reject the same and to take such further action with reference thereto as this court may by its order direct.

"If such sale be confirmed by the court, the purchaser shall make such further payments in cash on account of the purchase price as the court may from time to time direct.

The balance of the purchase price not required by the court to be paid in cash may either be paid in cash or the purchaser may satisfy and make good the balance of his bid, in whole or in part, by turning in to be canceled at their face value, with six per cent interest thereon from their maturity down to the date of sale, past due coupons of said third mortgage bonds maturing on or before January 1, 1897, and also third mortgage bonds, upon which latter shall be credited on account of the purchase price such sums in cash as would be payable on such bonds under the distribution herein ordered and in accordance with the priority herein adjudged.

"Such sale shall be made subject to the first and second mortgages upon said property, rights and franchises, hereinbefore described, the said mortgages being to secure bonds in the aggregate sum of $200,000, with past due interest coupons thereon, and said commissioner shall so advertise; and such sale shall also be made subject to the lien of the state of Missouri and the city of St. Louis for any and all public taxes and licenses which might be due in respect of said property, rights and franchises by the defendant railway company; and not allowed as preferential claims in this cause; and the said special commissioner shall so advertise.

"The court reserves the right to take possession of and to re-sell the property upon such notice as the court shall direct in case the purchaser shall fail or omit to make payment on account of any unpaid balance of the purchase price within three days after the entry of the order of record requiring such payment.

"It is further ordered that within thirty days after date of sale the holders of said third mortage bonds and past due coupons shall file their said bonds and coupons with the clerk of this court, who shall issue his receipt therefor. Said bonds and coupons so to remain on file, subject to the further orders of this court.

"And it is further ordered, adjudged and decreed that the funds realized from the sale of said mortgaged premises shall be paid into court, and which, together with the net earnings arising from the operation of said road while in the hands of the receiver herein, shall be applied as follows:

"1.   To the payment of costs and expenses of this cause and to all proper expenditures attendant upon said sale or sales, including compensation of the special commissioner, and also other proper allowances, compensation and disbursements as shall be fixed, allowed and taxed by this court.

"2.   To the payment of all liabilities incurred under the order of this court by the receiver in the operation of said road not theretofore paid.

"3.   To the payment of all taxes upon the property and all lawful penalties and costs that have accrued thereon down to the time of the decree and which may remain unpaid, and next to the payment of such preferential claims as the court may charge as liens on the mortgaged premises or the earnings, first using for such payment the earning of the road. as far as the same may apply.

"4.   To the payment of the coupons on said third mortgage bonds, maturing on or before January 1, 1897, with interest thereon, down to the date of sale to the holder thereof in the order of their maturity.

"5.   To the payment of the principal of said third mortgage bonds, together with interest at the rate of six per cent per annum from the first day of January, 1897, to the date of sale to the holders thereof.

"6.   In case said balance shall be sufficient to pay said bond and accrued interest thereon in full, then the outstanding bonds under said third mortgage deed of trust shall be paid *pro rata* to the holders thereof, and each of said bonds presented for payment shall be stamped by the clerk of this court so as to show the amount which had been paid on said bonds and coupons thereto attached, or if presented by the

purchaser or purchasers of said property, the amount credited as paid thereon. After being so stamped the bonds shall be returned to the respective holders thereof. And detached coupons for past due interest on said bonds shall be stamped in such manner as would indicate that they have been paid.

"7. If, after making the foregoing payments, there shall remain any surplus, it shall be paid to the defendant railway company or its assigns, or as the court shall hereafter order and direct.

"It is further ordered, adjudged and decreed that the two hundred thousand dollars of third mortgage bonds and coupons thereto annexed which have never been used or negotiated are hereby declared void, and shall be filed by the person in whose possession the same are found with the clerk of this court, and that the same be forthwith canceled by said clerk.

"And it is further ordered, adjudged and decreed that upon the completion and confirmation by the court, of any sale made under this decree, said commissioner shall execute and deliver to the purchaser or purchasers of said property a good and sufficient deed of conveyance in fee simple, which deed shall specify the property so purchased and the sum paid therefor, and expressed to be subject to the terms and conditions of this decree.

"And the court doth further order, adjudge and decree that the said C. C. Maffitt, as trustee under said third mortgage deed of trust, shall, at the time of the execution of the deed by the special commissioner herein to the purchaser of said property, grants, franchises, etc., as a further assurance to the purchaser or purchasers, his or their successors or assigns, joined with the said special commissioner in the execution of the deed to be made by him, as a party thereto, and shall thereby convey, transfer and release to the purchaser or purchasers, his or their successors or assigns, all his rights, title and interest in and to the property,

grants and franchises so conveyed and transferred to such purchaser or purchasers, by said special commissioner.

"And it is further ordered, adjudged and decreed by the court that in order that the court may retain full control over said property and its proceeds and be enabled to make such orders as it may deem proper with reference to the distribution of the fund arising from the proceeds of sale or sales and of the fund arising from the operation of said road by the receiver herein and for the settlement of the costs and expenditures and other matters as may be consistent with law and equity, the court hereby retains jurisdiction of this cause."

After unsuccessful motion to set the finding aside, and for new trial, defendant appeals.

It is asserted by the defendant that the final decree is erroneous in foreclosing the third deed of trust and ordering a sale for the full amount of the bonds and interest, secured by the third deed of trust, and actually issued. But the record shows that of their own motion the bondholders, or many of them, were permitted to intervene and be made parties by order of the trial court, when defendant company filed its original answer, and their rights passed upon on the former appeal. Other bondholders being represented by the trustee in the absence of bad faith upon his part, had no right to be made parties to the action.

In Farmers Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. Rep. 182, it was held in a foreclosure suit that the trustee named in the mortgage represents the bondholders, and, if he acts in good faith, whatever binds him, binds them, although they are not actual parties; and they have no right, therefore, to be made parties to the suit, except where the trustee is not acting in good faith for the protection of their interests.

The same rule is announced in Richter v. Jerome, 123 U. S. 233; Kent v. Lake Superior Ship Canal, Railway and

Iron Co., 144 U. S. 75; Elwell v. Fosdick, 134 U. S. 500.

There is no pretense that the bondholders, not made parties, have any interest in the bonds which the trustee does not represent, or that he is not acting in good faith, and under such circumstances, "whatever forecloses the trustee, in the absence of fraud or bad faith, forecloses them. This is the undoubted rule." [Richter v. Jerome, 123 U. S. loc. cit. 246.]

It is also claimed that the clause in the deed of trust declaring the bonds due on default of payment of one coupon for thirty days is not self-executing, and does not justify a decree of foreclosure for the full amount of the bonds. We can not concur in this position. The question here is not whether by the terms of the deed of trust, bonds and coupons the payment of which are secured thereby, and which according to their face become due at a certain and fixed time, are controlled by the deed of trust which provides that all of the bonds shall become due if default be made in the payment of any one of the coupons attached thereto that may become due, but whether such a provision in the deed of trust is valid for the purpose of enforcing the mortgage security. A similar question was before this court in the recent case of Owings v. McKenzie, 133 Mo. 323, and it was held that while a promissory note is not affected as to the date of its maturity by the terms of a deed of trust securing its payment, which provides that it shall become due on default of payment of another note, "except for the purposes of enforcing the mortgage security," thus recognizing the validity of such a provision in a mortgage deed of trust in so far as the enforcement of the mortgage security is concerned. It was matter of contract, and in the case at bar it is expressly provided in the mortgage deed of trust that it is "distinctly understood and agreed" that failure to pay any one of said coupons for thirty days after due should cause all of said bonds to become immediately due and payable, and we know of no reason why

such a contract is not valid. It is an agreement which the parties were at liberty to make, and there is nothing in it immoral or against public policy, and is a perfectly valid contract.

Moreover there are other provisions in the mortgage of a similar character, to-wit, the failure to pay taxes and assessments when required by law to be paid by the mortgagor, as well also as the failure by the mortgagor to set apart two hundred of the bonds to retire and cancel the first and second mortgage bonds, and upon the failure of the mortgagor to comply with these provisions of the mortgage deed of trust (which was admitted by defendant) it further provided that at the option of the holders of the bonds and coupons they might consider them due and payable, so that for either or all of the breaches the mortgage was properly foreclosed.

When different notes or bonds secured by a mortgage become due at different times, and it is provided by it, that if default be made in the payment of any one of the demands when it becomes due, that the trustee therein named may proceed to foreclose the mortgage and sell the property, and he does so, and it brings more than a sufficient amount to pay the debt for which it is sold, a court of equity will take hold of the fund and administer it according to the rights of the holders of all the securities whether the proceeding be by foreclosure or on creditor's bill. [Chicago, etc., R. R. Co. v. Fosdick, 106 U. S. 47; Olcott v. Bynum 17 Wall. 44; Noonan v. Lee, 2 Black, 499.] There was therefore no error in foreclosing the mortgage deed of trust, and in decreeing the sale of the property for the full amount of the bonds actually issued with interest.

It is also claimed that the order of March 6, 1897, appointing the receiver and the decree are erroneous in appropriating the income and earnings of the defendant company; collected by the receiver appointed under that order, to the payment of the coupons, bonds or intervening claims.

No exceptions seem to have been taken to the appointment of the receiver at the time, nor were any steps taken towards his removal until June 8, 1898, when it appears from the Record that the Peoples Railway Company filed a motion to set aside the order appointing him, but it does not appear what the grounds were, nor what disposition was made of the motion.

The appointment was acquiesced in by all parties to the suit for more than a year after it was made, during which time they participated in this suit, and they must be held to have waived any irregularity if any there was in the appointment. To hold otherwise would be doing the grossest injustice to the parties interested. The application for the vacation of an order appointing a receiver must be made in a reasonable length of time (Smith on Receiverships, p. 69; Palen v. Bushnell, 13 N. Y. Sup. 785), which was not done under the circumstances disclosed by the record in this case. But even if the motion had been made in time, as the record does not show what disposition was made of it, which was matter of exception, we are not at liberty to consider the question.

It is also contended that before plaintiff is entitled to an affirmance of the decree of foreclosure he should be required to place defendant company in the condition in which it was on March 6, 1897, before the petition was filed, and any relief accorded him should be based on his position after he had done so.

As we have already said if there was any irregularity in the appointment of the receiver it was waived by defendant, and by the order appointing him he was not only clothed with the authority to take the rents, profits and income of the road and to operate it for the benefit of all the creditors that it might be kept in operation in order that the highest price might be realized at the prospective sale, but it was made his duty to do so. In Smith on Receiverships, sec. 3,

p. 3, it is said: "A receiver may be defined as a person appointed by the court, as a *quasi* officer or representative of the court, and therefore occupying a disinterested position as between the parties, whose function it is to hold, manage, control, and deal with the property which is the subject-matter of, or involved in the litigation......A receiver is an indifferent person between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation *pendente lite*, when it does not seem reasonable to the court that either party should hold it." And under his authority as receiver he may also collect rents and profits, previously earned by the property of which he is receiver, if any there be, but such earnings when derived from the business of the road before the possession of the property is actually taken by the receiver belong to its general creditors in preference to mortgage bondholders. [New York Security and Trust Co. v. Saratoga Gas and Electric Light Co., 159 N. Y. 137.]

It does not appear, however, that any earnings of the road prior to the time the receiver took charge of it came into his hands, and whatever the road earned, and whatever came into his hands after he took possession of it, is expressly provided for in the decree rendered, in which it is said "that the funds realized from the sale of said mortgaged premises shall be paid into court, then together with the net earnings arising from the operation of said road while in the hands of the receiver herein, shall be applied first, to the payment of the costs of this suit, second, to the proper expenses attending the sale of the property under the decree, including compensation of special commissioner, and third, to the costs and expenses of operating the road.

A further contention is that plaintiff should be charged with all the earnings and income received by the receiver under the order of March 6, 1897, and a decree of foreclosure should not be rendered in his favor, unless the amount of

taxes and interest exceeds the amount of the earnings and income collected by the receiver under that order.

This contention, if we comprehend it, is bottomed upon the idea that the order appointing the receiver was absolutely void, and conferred no authority upon him, and that in all he did thereunder he was a trespasser, and that as what was done by him was at the instance of Rumsey, he also was a co-trespasser as well as tortfeasor, hence, Rumsey should be charged with all the earnings and income received under said order and that a decree of foreclosure should not be rendered in his favor, unless the amount of taxes and interest exceeds the amount of the earnings and income collected by the receiver under that order. But as the order appointing the receiver was not void, and was acquiesced in by defendants, this contention has nothing upon which to stand and, must for that reason be held to be untenable.

It is claimed that the court erred in excluding evidence of Charles Green's relations with, and influence over, the board of directors of the Peoples Railway Company, and the Fourth Street & Arsenal Railway Company. It is manifest that the desired evidence was mere matter of opinion, was not admissible for any purpose, and, therefore, properly excluded.

Defendant further contends, that the final decree is erroneous in finding and decreeing that any of the so-called intervenors, the German American Bank et al., who were permitted to become parties to the suit April 12, 1897, was a party plaintiff to this suit, or, as such, was entitled to a decree of foreclosure for the amount of the bonds and interest thereon held by it or them; and also in that in ordering a sale by a special commissioner, it did not order a sale for cash, and thereby violated the contract contained in the mortgage deed of trust.

As to the first of these propositions it is only necessary to call attention to the decree to satisfy ourselves that it is not

borne out by it. It provides in express terms that the property be sold "to the highest and best bidder for cash."

It is true that the sale is to be made subject to the confirmation of the court, and, that the decree also provides that the bonds and coupons secured by the mortgage deed of trust may be put up to such an amount as they may be proportionately entitled to, in payment by the purchaser or purchasers. But this furnishes no good reason for defendant's contention, because if the purchaser has the requisite bonds in payment of which the proceeds arising from the sale of the property are to be applied, why go through the useless ceremony of paying cash on the bid, and then taking up the bonds with the same cash? The practice in this respect is as provided by the decree. [Jacobs v. Turpin, 83 Ill. 424; 9 Ency. of Plead. & Prac., 512.] At any rate no possible injury could result to any one by reason of this provision in the decree and compliance with it, and the judgment should not be reversed upon that ground alone. Moreover, this case has always been regarded as a suit in equity, and so treated (Rumsey v. Peoples Ry. Co., 144 Mo. 191), and in such cases there is no question as to the power of the trial court to make such a provision in a decree.

Nor do we think there is any merit in the contention that the intervenors had no right to appear. They intervened and were made parties April 12, 1897, and when the case was here before, one of the errors then complained of was as such intervenors their rights were not sufficiently defined in the decree. While after the judgment was reversed, and, the cause remanded, defendant took steps to set aside the order allowing the intervenors to intervene, they failed in so doing, and rightly so, because the application to intervene was in accordance with the allegations in the petition, which was in behalf of all the bondholders who might desire to become parties to the suit, and it was clearly their right and

within the province of the court to permit them to do so. [First Nat. Ins. Co. v. Salisbury, 130 Mass. 303.]

As to the contention that the decree is erroneous in ordering the sale of the property by a special commissioner, it may be said, that this is not an unusual way for the conducting of such sales when made under decrees of courts of chancery.

Thus in Blossom v. Milwaukee & Chicago R. R. Co., 3 Wall. loc. cit. 205, it was held that in "sales of mortgaged premises under a decree of foreclosure and sale are usually made in the federal courts by the marshal of the district where the decree was entered, or by the master appointed by the court, as directed in the decree. Such sales must be by the person designated in the decree, or under his immediate direction and supervision, but he may employ an auctioneer to conduct the sale if it be made in his presence."

In Mayer v. Wick, 15 Ohio St. loc. cit. 550, which was a foreclosure proceeding, it is said: "Whether the power of the court to appoint a special master in such case is to be referred to the immemorial usage of courts exercising chancery jurisdiction, or is to be derived from the positive provisions of the code of civil procedure, we entertain no doubt of the existence of such power."

Our statute contains no provision prohibiting the exercise of such power, by courts of equity, while the right to exercise it dwells inherently in them.

Clearly there was no error in the decree ordering the sale by a special commissioner.

For these considerations we affirm the judgment. All concur, except *Sherwood, J.*, absent.